JAMES D. TURNBULL AND LEMUEL G. DAFOE v. DIANA RICHARDSON.

*Attorney and client—Fees for professional services—Expert testimony—Cross-examination—Striking out testimony in chief—Practice in Supreme Court—Error— Excessive verdict.*

1. It is not the province of this Court to set aside verdicts upon the ground that they are excessively large or small, that being a discretionary power, residing, under our practice, with the circuit judge.

2. The only questions reviewable on writ of error and bill of exceptions are those of *law*, which have been passed upon by the trial court.

3. The *fact* that an estate has been settled may exist, and not be shown by the proceedings in the probate court; and it is not necessary to produce such proceedings to prove such fact as a *collateral* matter.

4. It is the duty of an appellant to show error *affirmatively* and *conclusively*, and every presumption is in favor of the validity and regularity of the action of the court below, and will be applied in support of the judgment.

5. Where the record is contradictory, and by taking a detached portion error might be made to appear, yet if, by taking another portion which contradicts the one first considered, the judgment can be maintained, it is the duty of the Court to give effect to this latter portion instead of overturning the judgment.

6. The hypothetical question put to the expert witnesses does not, when rightly construed, and as understood by them, as gathered

from their answers (see opinion), call for any opinion upon the value of services other than those pertaining to the practice of law, and giving legal advice.

7. It has been settled by this Court that testimony given upon a legitimate cross-examination is treated as evidence in behalf of the party calling the witness. *Campau v. Dewey*, 9 Mich. 381, 418; *Wilson v. Wager*, 26 Id. 458; *Schratz v. Schratz*, 35 Id. 485; *Bennett v. Smith*, 40 Id. 211.

8. The fact that the answer of a witness to the main question put to him is stricken out does not authorize the striking out of his cross-examination if competent and relevant.

9. The end and purpose of testimony in legal proceedings is to arrive at the truth of the issues between the parties, and the tendency of the courts is to permit the introduction of any testimony which will tend to throw light upon the merits, and aid in a correct solution of said issues.

10. It is no reason for rejecting or striking out the cross-examination of a witness (if competent and relevant) that he has not given any testimony in chief, or that his testimony in chief has been stricken out.

11. Where testimony is taken by deposition, and the main question put to witness is incompetent,—as where it calls for parol evidence of the contents of a deed, and the witness is cross-examined as to such contents,—it is proper to strike out the question and answer, for the reason that such method of proof is incompetent.

12. In a suit for *professional* services, the testimony of expert witnesses stands upon the same plane as testimony in other cases, and is to be weighed by the jury to aid them in coming to a conclusion as to such value, if they are satisfied with such testimony.

Error to Alpena.  (Emerick, J.)  Argued November 8, 1887, and reargued February 27, 1888.  Decided April 20, 1888.

*Assumpsit.*  Defendant brings error.  Affirmed.  The facts are stated in the opinion.

*D. C. Holbrook,* for appellant.

*George H. Sleator* and *J. C. Shields,* for plaintiffs.

69 MICH.—26.

CHAMPLIN, J.   It is not the province of this Court to set aside the verdicts of juries upon the ground that their verdicts are excessively large or small.   This is a discretionary power, and resides, under our practice, with the circuit judge. The only questions we can review upon writ of error and bill of exceptions are those of law which have been passed upon by the trial court.

The errors assigned upon the record in this case relate principally to the rulings of the trial court holding that certain hypothetical questions were proper to be propounded to expert witnesses.

The plaintiffs are attorneys and counselors at law residing at Alpena.   This action is brought to recover for professional services claimed to have been rendered to the defendant at her request, and was tried before a jury at the Alpena circuit, and resulted in a judgment for plaintiffs.   Prior to the trial, the depositions of several attorneys residing at Detroit were taken by both parties as expert witnesses in the case.   These witnesses were examined upon oral interrogatories, both direct and cross, and the depositions were returned to the circuit court.   When they were offered in evidence at the trial, objections were made, and to the rulings of the court thereon error is assigned.

It will conduce to a better understanding of the legal points involved if I quote so much of the bill of exceptions as the principal assignments of error are based upon.   The bill of exceptions contains the following:

"This cause being called for trial, the parties being present, a jury was impaneled therein.

"Thereupon the plaintiff introduced evidence tending to show that on the eighteenth day of June, 1886, one Charles W. Richardson, of Alpena, Michigan, departed this life, in the state of Maine, leaving his last will and testament, a copy of which is hereto annexed, marked 'Exhibit A,' making a part of this bill.

"That said Richardson, at the time of making said will, resided in the state of Maine, but said will was made in Can-

ada; that, for some 20 years before his death, he came to Alpena, where he resided, with little property, and where he was largely engaged in the purchase and sale of real estate, the manufacturing and sale of lumber in a mill he owned, employing some 125 laborers, in which business he was engaged, and in full operation, at the time of his death, leaving an estate of nearly, if not quite, $1,000,000, consisting of said mill, vessels, lands, notes and bonds and mortgages, bank-stock, redwood lands in California, timber rights in Canada, leaving no children, but left a widow and some 12 brothers and half-brothers, his heirs, him surviving.

"There was evidence given upon the trial tending to prove all the material elements contained in the said question hereinafter set forth, and asked to the witnesses Russell, Atkinson, Dickinson, Baker, and Baker.

"That the defendant engaged Robert J. Kelley, Esq., of Alpena, an attorney, as her chief legal adviser and counsel; that she afterwards engaged the plaintiffs and George H. Sleator, attorneys of Alpena aforesaid, as assistant counsel; that the plaintiff acted principally in behalf of his firm; that he had practiced as an attorney in Alpena for 15 years; that on the twenty-eighth day of June, 1886, the defendant paid plaintiffs the sum of $250, and for which they gave her a receipt, of which the following is a copy, in the handwriting of Mr. Kelley:

"'ALPENA, June 28, 1886.

"'Received of Mrs. Diana Richardson, the sum of two hundred and fifty dollars, as a retainer in the matter of the administration and settlement of the estate of Charles W. Richardson, deceased.

"''TURNBULL & DAFOE, Attorneys.'

"That thereupon said Turnbull commenced to examine the matters of the estate, and all its various branches, and familiarize himself thoroughly with all the questions which could possibly arise in relation to said will and the matters of said estate. During this time, some of the heirs were opposed to the allowance of said will. That they caused to be filed June 28, 1886, in the probate court for Alpena county, a paper, a copy of which is hereto annexed, marked 'Exhibit B,' made a part hereof, and applied several times to said Turnbull to engage him in their behalf, in opposition to the defendant, to contest the proof of said will, and to hold himself for them as their attorney, in opposition to her, which application he refused.

" There was also evidence given upon the trial tending to prove that defendant, at the time she engaged plaintiffs, knew that the other side were after them, and was very anxious to retain them, and, after said plaintiffs were retained, gave her agent and attorney, Mr. Kelley, orders to use plaintiff Turnbull, and that said Kelley did consult, counsel, and advise with said Turnbull upon all matters that arose in the settlement of said estate. There was also evidence tending to próve that said Turnbull did everything that was necessary to accomplish the end for which he was employed; that the defendant, by Mr. Kelley, filed her petition to be appointed, and was appointed, special administratrix of said estate, during the pendency of a petition to be appointed sole executrix of said will. The point of the defendant, as special administratrix, in connection of the carrying on of the business, was examined, and various other points looked up. Mr. Kelley was consulted by defendant, and he would come to Mr. Turnbull and suggest any points he desired him to examine. A Mr. McMasters, who was overseeing the running of the mill, would consult Mr. Kelley on different points; and, if there was anything Mr. Kelley desired to know, he would consult Mr. Turnbull, and they consulted and advised together.

"The will was presented by Mr. Kelley to the probate court for allowance, the plaintiffs being present merely, on the twenty-sixth day of July, 1886, at which time the witnesses were produced to prove the same, and were cross-examined by the attorney for the heirs; they not producing any witnesses. The hearing occupied about three hours. The will was then allowed. The defendant gave a bond as sole executrix and as residuary legatee, and thereby she qualified as sole executrix. That a notice was made to appeal, and a bond was executed on the part of the heirs to appeal, but the same were never filed in the probate court for said county.

" That, before the time had expired to perfect said appeal, the defendant paid to the said heirs the sum of $120,000 in full settlement of any pretended right they might have to said estate, and released the same. There was also evidence tending to prove that the said heirs were making an actual contest, and would have appealed the probating of said will if the said defendant had not settled with them before the expiration of the time limited for said appeal. It appeared the defendant made said settlement with the heirs, sold said mill and large amount of lands, all of her interests in said vessels and other property, amounting to about $300,000,

without consulting the plaintiffs, and without advising with them in relation thereto, but Mr. Kelley was consulted.

"It also appeared that the only proceedings had in the probate court for the county of Alpena, in relation to said estate, were the petitions for the appointment of a special administratrix, and filing a bond therefor, the petition for and the proof of said will, and the order allowing said will, the appointment of appraisers, and the filing of an inventory and residuary legatee's bond; also the recording of the releases of the heirs.

"The plaintiffs continued under their engagement, and held themselves in readiness to act for the defendant, for the period of about five months, but were not called upon to render any service after said settlement with the heirs, September 17, 1886, except as counselors with Mr. Kelley. There was no evidence that the plaintiffs were in any way engaged in the actual management of the business of the estate.

"The plaintiff, having called Mr. Kelley as a witness, put to him the question, 'Was the estate of Mr. Richardson all settled up?'

"The question was obj·cted to, as the way to prove that was by the proceedings in the probate court. Objection overruled, and defendant accepted. The witness answered, 'Yes.'

"The plaintiff Turnbull, being recalled in his own behalf, was asked to state, 'Whether or not, at the time you signed the receipt (copied above), you knew that it was a receipt for a retainer in the case.'

"The question was objected to as irrelevant and immaterial, and tending to contradict a written paper, and no foundation laid for it. The objection was overruled, and defendant excepted. The witness answered: 'The receipt I signed I suppose was·a receipt for the money. I supposed it was a receipt for so much money received from Mr. Vrooman (agent of defendant). I never read the receipt at the time he handed it to me.'

"On cross-examination said: 'I probably should have signed the same receipt if I had read it. It would not have made any difference. I got the money, and signed the receipt. It is not anything more than a receipt for so much money on that employment.'

"There was evidence tending to show that the $250 was not to be in full of the retainer.

"The plaintiffs offered to read in evidence a deposition of Alfred Russell, taken by them in this case; and, after stating that he resided in the city of Detroit, was an attorney and

counselor at law for thirty years, the following question was put to him, to wit:

" 'In putting this question, it necessarily involves a history of the services rendered by the plaintiff. On the eighteenth of June last, Charles W. Richardson, of Alpena, died, leaving an estate consisting of a saw-mill, lumbering manufacturing plant, of the value of about a half a million of dollars, in actual operation; also other personal property and real estate, and vessel property; the entire estate aggregating about one million of dollars. This estate was all devised and bequeathed to his widow, an old lady, 61 years old, by a will executed 29 years prior to the death of Mr. Richardson. The will was actually executed in Canada, although the domicile of the testator, at the time, was in the state of Maine. At the time of making this will, the deceased was possessed of no property in Michigan, and no real estate anywhere excepting a building lot in some small village in Maine; all the property left at his death having been acquired in Michigan after the making of the will.

" On or about the twenty-fifth of June, the defendant, Diana Richardson, a widow, 61 years old, through her agent and attorney, employed the plaintiff as associate counsel in the administration, management, and securing to herself the estate left by her husband by virtue of the will before named. There were 12 heirs of the deceased,—six brothers and sisters of the full blood, and six brothers and sisters of the half blood,—who denied the validity of the will, and threatened a contest. The plaintiff Mr. Turnbull was sought by these contesting heirs to accept service on their side of the case, of which the defendant had notice through her agent and attorney. Plaintiff Turnbull consented to be employed by the defendant in all matters pertaining to her estate, and counseled, examined authorities, and advised as to the contest made by the heirs, and the important business interests of the estate, covering a period of five months. An actual contest was made in the probate court, which resulted favorably to the proponent of the will. The contestants prepared an appeal to the circuit court, by giving the requisite notice, reasons or grounds for an appeal, and procured the bond. The plaintiff Turnbull participated, counseled in the preparation to meet the appeal, attended in person, at the probate court, the hearing,—held himself in readiness to do any service growing out of any matters in which said estate might be interested.

" ' On the thirtieth day of August, a few days before the expiration of the time limited for perfecting said appeal by the contestants, the defendant compromised with the heirs, paying them $120,000. The estate was successfully closed up; the principal part, consisting of real estate and personal property, converted into money, and turned over to the widow. The services of the plaintiff extended over a period of five months. What would you say should be a fair

and reasonable charge for such services under all the circumstances, taking into consideration his opportunity to be employed on the other side?'

" '*Answer*. Ten thousand dollars.'

"The defendant objected to the question for the reason that he is called as an expert as an attorney merely, not an expert in any other business, as appears by the depositions. He is asked, not only the value of legal services, but he is asked as to the services in the management of the estate. That was something he knew nothing about; yet the question covered professional services and business services. Also that the question is not upon facts as they now appear in the case. The objection was overruled, and the defendant excepted."

The bill of exceptions also contains the following:

"There was no evidence given in the case that the witnesses, whose depositions were taken, had any information or knowledge as to the management of said estate, and the value of services therefor.

"The court directed the following, on the suggestion of plaintiffs' attorney, to be inserted in this bill: That no witnesses attempted to give any opinion as to the value of the business management of said estate. The theory of plaintiffs' case was that they had rendered valuable services for defendant, and were entitled to a reasonable compensation for the same; that the said sum of $250 received by them should be credited to defendant; that it made no difference whether it was called a retainer or advance payment,—it was so much money paid; and if the jury should find, under all the evidence, that their services were reasonably worth more, they were entitled to the balance; and there was evidence tending to establish this theory.

"The plaintiffs also gave evidence of competent attorneys, who had actual knowledge of the facts in the case, tending to show that their services were worth from ten to fifteen thousand dollars."

Two errors are assigned upon the record above set forth, namely:

1. In permitting the plaintiffs to put the following question to the witness Kelley: " Was the estate of Mr. Richardson all settled up?"

2. In permitting the plaintiffs to read from the deposition of Alfred Russell the hypothetical question above set forth.

It is sufficient to say, respecting the first error assigned, that it was not necessary to introduce the proceedings of the probate court in order to prove this collateral matter. The fact that the estate was settled might exist, and the proceedings in the probate court might not show it. There was no error in permitting the question.

The second error assigned is the one most relied upon to obtain a reversal of the case. The error alleged must be confined to the objections stated in the trial court when the deposition was offered in evidence. That the witness was called as an expert as an attorney merely, and not as an expert in any other business, is admitted on all sides. The objections to the question, as stated, are two in number, namely:

"1. That the witness is asked, not only the value of legal services, but he is asked as to the services in the management of the estate. That was something he knew nothing about; yet the question covered professional services and business services.

"2. That the question is not upon facts as they now appear in the case."

The second objection is not supported by the record. The bill of exceptions expressly states that—

"There was evidence given upon the trial tending to prove all the material elements contained in the said question hereinafter set forth, and asked to the witnesses Russell, Atkinson, Dickinson, Baker, and Baker."

It is claimed by counsel for defendant that in this respect the record is contradictory, and that it affirmatively appears therefrom that there was no contest whatever in the probate court over the probating of the will. In support of this position, he cites us to that portion of the record which states that—

"It also appeared that the only proceedings had in the probate court for the county of Alpena, in relation to said estate, were the petitions for the appointment of a special administratrix, and filing a bond therefor, the petition for and the proof of said will, and the order allowing said will, the appointment of appraisers, and the filing of an inventory and residuary legatee's bond; also the recording of the releases of the heirs."

And counsel claims that this statement precludes the plaintiffs from asserting that an actual contest was made in the probate court. Defendant's counsel asserts that there was no contest in the probate court, and therefore the assertion of fact contained in the hypothetical question, that—

"An actual contest was made in the probate court, which resulted favorably to the proponent of the will,"—

Is not supported by the evidence in the case. This depends upon what is meant by the term "actual contest." The natural import of the words, considered in connection with the context and subject-matter of the question, is that the proceedings to prove the will were not entirely *ex parte*. The question had stated that there were 12 heirs, who denied the validity of the will, and threatened a contest. The record shows that these heirs were represented in the probate court by their attorney, and that they cross-examined the witnesses introduced by the proponent of the will. In view of these facts, it cannot be said that the proceedings in the probate court were wholly *ex parte*, or that no contest was made. How far it was contended or argued before the probate court that the proofs did not establish the validity of the will the record does not state. It is a peculiarity of our probate practice that a written issue need not be made up or joined in contests before the probate court, but the party who feels aggrieved by the order or decree of the probate court may appeal to the circuit court, and there the circuit court may direct an issue to be framed if it deems it essential.

The record before us does state that—

" There was also evidence tending to prove that the said heirs were making an actual contest, and would have appealed the probating of said will if the said defendant had not settled with them before the expiration of the time limited for said appeal."

It is apparent from the record that the recital of " the only proceedings" had in the probate court refers merely to the entries and files of the case which appear in that court. It does not purport to set forth all that transpired before the court upon the hearing. Neither the fact of the examination nor cross-examination of the witnesses, nor the argument of counsel, are entered in the proceedings; and it is not disputed that proceedings did occur before the probate court that are not contained in the recital stated in the record.

Not only are we bound to look at the whole record, and give it a reasonable construction, but we are bound also not to lose sight of the principles so often decided and enforced in this Court, that it is the duty of a party removing a case to this Court to show error affirmatively and conclusively, and that every presumption is in favor of the validity and regularity of the action of the court below, and will be applied in support of the judgment. If, therefore, it should by any means appear that the record is contradictory, and by taking one portion detached from the rest error might be made to appear, yet if, by taking that part of the record which contradicts this, the judgment can be maintained, it is the duty of the Court to give effect to that part which supports the judgment, instead of overturning it. This rule is so reasonable and just that it needs no citation of authority to support it.

The counsel or court that would resort to technicalities extracted from a strained construction of a portion of the record, in opposition to or disregard of the direct, affirmative, and positive statements of another portion, to overthrow judgments recovered before the trial court, would invite the

criticism of all right-minded men, and justly bring instrumentalities established to secure justice into the contempt. and condemnation of the community.

The other objection is the one which was the most elaborately argued, and seems to be the most relied upon by counsel for defendant for a reversal. To my mind, it is based entirely upon a total misapprehension of the meaning of language. It asserts that the witness is asked as to the services in the management of the estate, and the objector insists that the question covers both professional services and business services. The question is, in my opinion, unobjectionable. It does not, rightly construed, and as understood by the witnesses, as I gather from their answers, call for any opinion upon the value of services other than those pertaining to the practice of the law, and giving legal advice. The particular infirmity supposed to exist in the question, and which is pointed out and relied on by defendant's counsel, is contained in these words:

" On or about the twenty-fifth of June, the defendant, Diana Richardson, a widow, 61 years old, through her agent and attorney, employed the plaintiff as associate counsel in the administration, management, and securing to herself the estate left by her husband by virtue of the will before named."

And it is contended by defendant's counsel that this question states as a fact assumed that the plaintiffs engaged in the management of the property and conduct of the business belonging to the estate, and that such services were not professional services, nor such as were proper to be submitted to an expert witness for an opinion as to their value. I do not think the contention is warranted by the language used. It expressly states that the plaintiff Turnbull was employed as *associate counsel* in the administration management; and the plain meaning is that such employment related to counseling and giving advice, as an attorney, relative to the administration and management, and not as an employé to manage the

business pertaining to the administration. A little further down in the question it is stated that the—

"Plaintiff Turnbull consented to be employed by the defendant in all matters pertaining to her estate, and counseled, examined authorities, and advised as to the contest made by the heirs, and the important business interests of the estate."

The question shows plainly enough, and without ambiguity, that the employment of plaintiff Turnbull, and the services performed by him, were purely and exclusively professional services as an attorney and counselor at law. The record sets the matter at rest wherein it states:

"No witness attempted to give any opinion as to the value of the business management of said estate."

This covers the testimony of expert witnesses as well as others. The question does not call for the opinion of the witness as to the value of services for the business management of the estate; and, as no witness attempted to give any opinion as to such value, it is unreasonable to contend that the question was improper for the alleged reason that the question asks an opinion upon the value of services in the management of the estate. The objection has no foundation in the record to rest upon.

That attorneys are frequently employed to give counsel of a legal nature concerning the management of business cannot be disputed. Any lawyer of standing and practice at the bar knows that attorneys are constantly retained and counseled with by business men respecting the proper conduct and management of their business, so as to avoid complications and difficulties which may lead to litigation; and such advice, given by their attorney or counselor, is as much professional services, for which he is entitled to compensation, as if given in a litigated matter. Indeed, that attorney best serves his client who gives him such advice as enables him to avoid litigation in the conduct of his business.

No other objection was made in the court below to the hypothetical question, and no other can be considered here.

It has been urged, however, that the question is improper, because it embraces facts which are not of an expert character; that it does not state all the facts in the case; that it is not sufficiently explicit, and does not set out in detail every particular service rendered, so as to enable the expert to form a just conclusion as to the value of the services rendered. No such objections appear from the record to have been made in the court below. They are raised here for the first time. Had they been properly and timely made, they must have been overruled as entirely untenable.

Hypothetical questions may, and often must in order to convey any meaning whatever, embrace facts assumed or proven, which are not, standing alone, the subject of expert testimony. Such question need not state all the facts in the case. If the facts stated are in the case, or afterwards proven, and they are such as to form the basis of an opinion by an expert, the question is proper, although it does not contain a statement of all the facts. The value and weight of the answer or opinion will depend very much upon whether the question contains a full or only partial statement of facts. This is for the jury to determine, and is a proper subject of argument before them. So, too, as to being explicit, certain, and containing fullness of detail; all these considerations are proper to be addressed to the jury, and weighed by them.

In *Harland v. Lilienthal*, 53 N. Y. 438, it was said that the value of professional services is made up of so many complex and collateral elements that absolute accuracy is unattainable. And Mr. Justice Folger said:

"It surely was material to show the nature and importance of the controversy, and what results hung upon it in other matters, and how other matters affected it and increased its gravity."

*Harnett v. Garvey,* 66 N. Y. 641, was an action to recover for services as attorney and counselor. The plaintiff called an attorney, and asked him what would be a reasonable charge for counsel and advice, and the giving an opinion, as to the right of the state to maintain the action, occupying most of plaintiff's time for two or three weeks, where the amount of the property affected, or to be affected, was $500,000. This was objected to by defendant's counsel, on the ground that there was no evidence to sustain the assumption as to the value of the property. Held, that the question was proper; that the rule in asking hypothetical questions for the purpose of obtaining the opinions of experts is that the counsel may assume facts as they claim them to exist, and an erroneous assumption does not make the interrogatory objectionable if it is within the possible or probable range of the evidence.

In *Mercer v. Vose,* 67 N. Y. 58, the court say:

"Witnesses may give opinions as to the value of services of which they had peculiar knowledge, which a jury is not supposed to possess. They may base their opinions upon what they know of the services rendered, or upon a hypothetical case, including some or all the facts proven, and the jury will determine, from the skill of the witnesses and all the other circumstances, the weight to be given to the opinions."

The propriety of the question propounded to the witness Russell in this case is supported by the following authorities: *Jackson v. Railroad Co.,* 58 N. Y. 623, affirming 2 Thomp. & C. 653; *Beekman v. Platner,* 15 Barb. 550; *Filer v. Railroad Co.,* 49 N. Y. 42; *People v. Augsbury,* 97 Id. 501; *Reynolds v. Robinson,* 64 Id. 589; *Blake v. Griswold,* 103 Id. 436 (9 N. E. Rep. 434); *State v. Felter,* 25 Iowa, 75; *Goodwin v. State,* 96 Ind. 554; *Railway Co. v. Falvey,* 104 Id. 409 (3 N. E. Rep. 389); *Railway Co. v. Wood,* 113 Id. 544 (14 N. E. Rep. 572); *Mortgage Co. v. Henderson,* 111 Id. 24 (12 N. E. Rep. 88); *Cowley v. People,* 83 N. Y. 464; *Lombard v. Bayard,* 1 Wall. Jr. 207; *Quinn v. Higgins,* 63 Wis.

664 (24 N. W. Rep. 482); *Halaska v. Ootzhausen,* 52 Id. 624
(9 N. W. Rep. 401); *University v. Parkinson,* 14 Kan. 159;
*Railroad Co. v. Nichols,* 24 Id. 242; *Allis v. Day,* 14 Minn.
516; *Beaubien v. Cicotte,* 12 Mich. 459; *Furniture Co. v.
Ransom,* 46 Id. 416 (9 N. W. Rep. 454); *People v. Hare,* 57
Id. 513 (24 N. W. Rep. 843); *People v. Sessions* (per SHER-
WOOD, J.) 58 Id. 594 (26 N. W. Rep. 291); *Williams v. State,*
64 Md. 384 (1 Atl. Rep. 887).

Error is assigned upon the refusal of the court to strike out
the testimony of Fred A. Baker, given upon his cross-exam-
ination. Baker was one of plaintiffs' witnesses, and· was
introduced as an expert, and the same question was put to
him that was put to the witness 'Russell which we have been
considering. His testimony was taken under the authority
contained in section 7459 of Howell's Statutes, and subse-
quent sections. The examination and cross-examination was
oral. When the deposition was offered in evidence upon the
trial, the defendant's counsel made the same objection to the
hypothetical question as that made to the deposition of Mr.
Russell, and moved to strike out the answer thereto as being
irrelevant, and not based upon anything contained in the
interrogatory. The objections were overruled, and the ques-
tion and answer were read. The defendant's counsel read
the cross-examination in evidence, only a portion of which is
returned in the bill of exceptions. After the examination of
several witnesses, the court did strike out the answer to the
main question. Thereupon the defendant moved to strike
out the whole cross-examination of said Baker, which was
refused, with the exception of his answer to an immaterial
question. The motion was based exclusively upon the fact
that the answer of the witness to the direct question had been
stricken out. The correctness of this ruling must depend,
not upon the result of the prior motion, but upon the ques-
tion whether the testimony given upon his cross-examination,
was relevant to the issue.

It has been settled by this Court that testimony given upon a legitimate cross-examination of a witness is treated as evidence given in behalf of the party calling him. *Wilson v. Wager*, 26 Mich. 458; *Campau v. Dewey*, 9 Id. 381, 417, 418; *Schratz v. Schratz*, 35 Id. 485; *Bennett v. Smith*, 40 Id. 211. It follows from this that, if the testimony elicited upon cross-examination is pertinent to the issue, it is properly in the case, and it would be improper for the trial court to exclude it. If it makes for the party producing the witness, and is his testimony, it is difficult to see what right the trial judge has to strike it out, against his objection. The fact that a portion of a party's testimony is stricken out does not authorize the trial court to strike out other testimony which is relevant, no matter by whom called out. No objection was made that the testimony given upon cross-examination was irrelevant or incompetent, and it was read in evidence by the defendant's counsel without objection or reservation.

The end and purpose of testimony in legal proceedings is to arrive at the truth of the issues between the parties, and the tendency of the courts is to permit the introduction of any testimony which will tend to throw light upon the merits, and aid in a correct solution of the issues involved in the controversy. In England the rule is that when any witness has been examined in chief, or has been intentionally sworn, the opposite party has a right to cross-examine him, except when the witness was called merely to produce a document on a *subpœna duces tecum*, or in order to be identified; and this rule has been substantially adopted in Massachusetts and other of the American states. It has been substantially acted upon in practice in this State. We had occasion to remark upon the scope allowed upon cross-examination in the case of *People v. Barker*, 60 Mich. 277, 302 (27 N. W. Rep. 539). It is therefore no reason for rejecting or striking out the cross-examination of a witness that he has not given

any testimony in chief, or that his testimony in chief has been stricken out.

If the testimony were taken by deposition, and the question put was incompetent,—as where it calls for parol evidence of the contents of a deed, and the cross-examination has reference to the contents of such deed,—it would be proper to strike out the question and answer, for the reason that such method of proof is incompetent. In such case the cross-examination must necessarily fall with the direct, because it contains the same infirmity regarding the method of proof. Such testimony, whether given upon direct or cross-examination, is incompetent. Such was the case of *Angell v. Rosenbury,* 12 Mich. 241, 259. The question in that case differs from the one asked in this in a point which lay at the foundation of the decision in that case. The question in that case was incompetent and improper. In this case it was competent and proper. The Court said:

"If the direct interrogatory, and the answer to it, be rejected as incompetent, the cross-interrogatory and answer, being dependent upon it, must also be rejected."

The objection upon which the answer to the direct question in this case was stricken out was that such answer was irrelevant, not that the question was incompetent. We have held the question was proper, and the record states that—

"The defendant cross-examined said witness Baker as to the effect of the retained services, and other matters read to him from said deposition."

If the answers to such cross-examination were relevant to the issue, I know of no principle which would authorize the trial court to strike it out without consent of both parties.

The only errors assigned upon refusal of the court to charge as requested by the defendant, which demand consideration, are the following:

"3. That the testimony of the witnesses sworn in this case as experts is not to be taken as binding your judgment as to

69 Mich.—27.

the amount of plaintiffs' claim, but may be considered in aid of your judgment as to the amount the plaintiffs may be entitled to.

"4. If you find the evidence in this case does not fully sustain the facts inquired in the hypothetical question, you will not give the answers to such question any effect, and not evidence of anything contained in such answers.

"5. If the testimony does not tend to establish every fact embraced in the question, you will disregard the answers given."

The fourth and fifth requests become unimportant under the allegation contained in the bill of exception, that there was evidence given upon the trial tending to prove all the material elements contained in the said question set forth and asked the expert witness.

The nature of the plaintiffs' case was such, as to the value of services rendered by them, that it could be established or defeated only by the testimony of experts. As regarding value, the only testimony was that of experts. It stood, therefore, upon the same plane as testimony in other cases,— to be weighed by the jury, and to aid them in coming to a conclusion as to the value of the services rendered, if they were satisfied with it.

In *Gartner v. Beller*, 54 Mich. 333 (20 N. W. Rep. 65), the plaintiff sued for a balance due for professional services. He introduced his own and the testimony of other witnesses as to value. The defendant put in no proof of value. The court called the attention of the jury to the fact that no evidence of value had been given by defendant, and instructed them, in substance, that they might use the testimony given as a ground for basing a verdict upon, if they were satisfied with it, and they so found. CAMPBELL, J., speaking for the Court, said:

"We can find no reasonable ground for objection to any of the rulings below, which seem to us entirely proper, and the only ones which could have been given."

While the circuit judge did not instruct the jury in the language of the request, he did not, on the contrary, instruct them that the testimony of the experts was binding upon their judgments. He did instruct the jury that—

"In determining the compensation of an attorney, or, indeed, of any professional man, for professional services, the ordinary layman who is called into the jury-box—persons not in that profession—have to depend, *in a measure*, on the opinions of those persons who are acquainted with what sums are usually charged in the same profession for the same services."

After calling their attention to the issue, and the claims of the respective parties, he said:

"So you will proceed in this case, gentlemen, as I have already stated to you, and determine from all the evidence in the case; and, if you find for the plaintiffs upon any disputed point, it should be by a fair preponderance of the evidence in the case. You should determine, as well as you can, the conflicting evidence, the evidence produced here, and that which has been read in your hearing from the witnesses sworn out of court."

He instructed them to determine from the evidence in the case just exactly what Mr. Turnbull was hired to do in the case, and what he had done; and, if they found for the plaintiffs, that they should give them a fair and reasonable compensation for the labor he had performed. We think the charge presented the case fairly to the jury, and substantially covered the idea involved in the instruction asked.

The remarks of CAMPBELL, C. J., in the case of the *People v. Finley*, 38 Mich. 482, 486, are quite pertinent here. He said:

"We are not disposed to critcise with any great nicety the omission of courts to give requests which tend to distract the minds of jurors by calling special attention to metaphysical subtleties or to particular testimony. A jury knows, without instruction, that it has a right to consider any testimony which has been allowed to go before it, and to draw such inferences as naturally are drawn by each one of the body. When

a court calls attention to bits of evidence, or to particular witnesses, more than others, there is some danger that undue prominence will be given to what is so designated."

Upon the whole record, therefore, we are of opinion that there has been no error committed prejudicial to the defendant, and that the judgment should be affirmed.

CAMPBELL and LONG, JJ., concurred with CHAMPLIN, J.

MORSE, J.. The plaintiffs brought suit in the circuit court for the county of Alpena to recover for the value of professional services rendered by them as attorneys to the defendant. They obtained a verdict and judgment in their favor in the sum of $8,000.

The plaintiffs on the trial introduced the testimony, taken by deposition, of several prominent attorneys in this State as to the worth and value of their services. Hypothetical questions, claiming to assume the facts and circumstances of their employment and work, were propounded to and answered by the witnesses, against the objections of defendant's counsel.

It would not seem always to be an easy matter, before the facts of a case have been developed in the course of the trial, to obtain from expert witnesses, who are required to testify upon a given state of facts, and not of their own knowledge, evidence that would be pertinent to the issue or fit the facts of the case. The facts upon which the answer of such witnesses was based might not all or any of them appear upon trial; and if one material fact entering into a hypothetical question, and forming a part of it, should be wanting in the testimony of the whole case, the answer of any witness to such question would become useless, as it could not be received in evidence.

The answer of an expert witness to a hypothetical question must be supposed to rest on all of the facts stated in such question; and, if one of these facts is not found in the case, the jury must discard the answer to the question, under all

of the authorities. And the reason for the rule is founded upon principle, and is clearly apparent without argument.

But in this case the plaintiffs were suing for their own personal labor. They knew, as well before trial as at any other time, the full extent, as well as the detail, of such work. It was therefore an easy matter for them to frame hypothetical questions in strict accordance with the facts, as they themselves would testify to them, of their employment, responsibilities, and duties, as well as the actual work performed by them, in the capacity of attorneys for defendant. They ought, therefore, to be held to the letter of the law in all questions arising upon the competency of the hypothetical inquiries in this respect, and there can be no excuse for these questions containing either misleading, mistaken, or ambiguous assumptions of facts.

If any of the questions so framed and put by the plaintiffs in this case, who had a perfect and complete knowledge of each and every fact of their labor and employment, was so ambiguous in its meaning as to be liable to mislead any witness, it should not have been permitted to stand in the case. The evidence of experts must be kept strictly within the domain of their knowledge as experts, and it must clearly appear, as a foundation for their testimony, that, by their calling or experience, they are qualified to give evidence as experts upon the subjects embraced in the hypothetical questions. If, by any legitimate inference, the question put to an expert contains any statement by which the witness may have been led, as in this case, to place an added value upon plaintiffs' services, because of an appraisal by the witness of the value of work done by them outside of the natural and ordinary labors of an attorney in the duties of his profession, then the answer to such question cannot be considered as within the limits of his expert knowledge as an attorney. In other words, it must be plain and certain that the expert, as an expert, has not been permitted to travel outside of his

knowledge as an expert, and to testify to matters of which there was no evidence that he possessed any peculiar skill or particular knowledge by reason of his profession or practice as an attorney.

It is the main complaint of the defendant in this case that the different attorneys examined as experts by the plaintiffs, without any showing of any peculiar or particular knowledge of the business, except the mere fact that they were practicing attorneys, were permitted to place a value and price upon the services of plaintiffs in running, conducting, and managing a large lumbering business, and closing up the same.

The following question was put to Alfred Russell and others:

"In putting this question, it necessarily involves a history of the services rendered by the plaintiff.

"On the eighteenth of June last, Charles W. Richardson, of Alpena, died, leaving an estate consisting of a saw-mill, lumbering manufacturing plant, of the value of about a half a million of dollars, in actual operation; also other personal property and real estate and vessel property; the entire estate aggregating about one million of dollars. This estate was all devised and bequeathed to his widow, an old lady, 61 years old, by a will executed 29 years prior to the death of Mr. Richardson. The will was actually executed in Canada, although the domicile of the testator, at the time, was in the state of Maine. At the time of making this will, the deceased was possessed of no property in Michigan, and no real estate anywhere, excepting a building lot in some small village in Maine; all the property left at his death having been acquired in Michigan after the making of the will.

"On or about the twenty-fifth of June, the defendant, Diana Richardson, a widow, 61 years old, through her agent and attorney, employed the plaintiff as associate counsel in the administration, management, and securing to herself the estate left by her husband by virtue of the will before named. There were twelve heirs of the deceased,—six brothers and sisters of the full blood, and six brothers and sisters of the half blood,—who denied the validity of the will, and threatened a contest. The plaintiff Mr. Turnbull was sought by these contesting heirs to accept service on their side of the case, of which the defendant had notice through her agent

and attorney. Plaintiff Turnbull consented to be employed by the defendant in all matters pertaining to her estate, and counseled, examined authorities, and advised as to the contest made by the heirs, and the important business interests of the estate, covering a period of five months. An actual contest was made in the probate court, which resulted favorably to the proponent of the will. The contestants prepared an appeal to the circuit court, by giving the requisite notice, reasons or grounds for an appeal, and procured the bond. The plaintiff Turnbull participated, counseled in the preparation to meet the appeal, attended in person, at the probate court, the hearing,—held himself in readiness to do any service growing out of any matters in which said estate might be interested.

"On the thirtieth day of August, a few days before the expiration of the time limited for perfecting said appeal by the contestants, the defendant compromised with the heirs, paying them $120,000. Ths estate was successfully closed up; the principal part, consisting of real estate and personal property, converted into money, and turned over to the: widow. The services of the plaintiff extended over a period of five months. What would you say should be a fair and reasonable charge for such services, under all the circumstances, taking into consideration his opportunity to be employed on the other side?"

I think this question open to the objection made by defendant's counsel. It does not clearly appear therefrom that the question involved, or that the answer was made to the question upon the basis only of, the natural and legitimate duties and labors of an attorney at law. It implies that the plaintiffs assisted in the management of the important business interests of the estate, and helped to close the same up, and convert it into money.

No peculiar knowledge of or qualification to manage and close out a great lumbering business was shown in any of the attorneys to whom this question was propounded. They were simply shown to be attorneys of many years' practice in the. city of Detroit.

It appears from the record that the circuit judge directed,.

upon the suggestion of the plaintiffs' attorney, the insertion of the following clause in the bill of exceptions :

"No witness attempted to give any opinion as to the value of the business management of said estate."

As the question put, as heretofore stated, and some of the answers thereto, are given in the record, we cannot be bound by this statement, when such question and answers are before us, and directly contradicted. No one can read the question put to Russell and others without being impressed that the assistance of the plaintiffs in the business management of this vast estate is one of the principal facts relied upon and emphasized in adding value to the services of plaintiffs in defendant's behalf.

The management and closing out, and converting into money, of such a vast estate as this, and the conducting of a saw-mill, lumbering, and vessel business, cannot be considered as within the ordinary province and duties, in the practice of his profession, of even a Detroit lawyer; and, before he is qualified to give expert evidence upon the subject, it is necessary that some evidence of his competency to so testify should be given, other than the simple fact of his being a practicing attorney in such city.

Upon the propounding of this question to Fred A. Baker, he answered as follows:

"Well, I should say that a charge of $10,000 would be a reasonable charge; but I base that, in part, upon Mr. Turnbull's standing at the bar in Alpena county, and his standing in that community; and the fact that he was associated with Mr. Kelley in protecting the interests of Mrs. Richardson; and the fact that they held themselves in readiness to meet any contest in the courts of Alpena county that might arise in regard to the validity of this will and the administration of the estate. What I refer to is the fact that Mr. Kelley and Mr. Turnbull are the leading lawyers in Alpena county; and while, perhaps, it is not entirely an important consideration, at the same time, practically, it is important. Mr. Turnbull is a prominent Democratic politician; Mr. Kel-

ley is a Republican politician ; and, hitched together, it would be almost impossible for outside counsel to get a verdict from them. I know that from personal experience, and I know that from the situation of the county.

"Alpena county is made up of a city of nine or ten thousand inhabitants, where there are a lot of saw-mills ; the rest of the county is largely farming lands, and pine land that has been cut off; there are a few farmers scattered through the county that eke out a miserable existence; and the ability of Mr. Turnbull and Mr. Kelley, as advocates before a jury in that county, is something like the ability and influence that was formerly possessed in this county by a firm I have heard of,—the old firm of Howard, Bishop & Holbrook; and if Mrs. Richardson, with this large estate, employed those lawyers, and expected to have this will contested, and finally settled it, and paid the contestants $120,000, a charge on Mr. Turnbull's part of $10,000 is not unreasonable, in my judgment."

No other question was asked him upon his direct examination, except the preliminary ones showing his residence, age, and occupation.

The defendant's counsel then moved to strike out this answer as being irrelevant, and not based upon anything contained in the interrogatory. This motion was refused. The defendant's counsel then read the cross-interrogatories, and the answers thereto, which had been taken before the trial. Subsequently, the court reviewed his decision, and upon reflection granted the motion to strike out the answer of Baker to the direct interrogatory.

Defendant's counsel then moved to also strike out the answers to the cross-interrogatories. This the court refused. The court erred in this refusal. When this answer was stricken from the case, the answers to the cross-interrogatories, which were drawn out because of the answer to the direct inquiry, should have gone with it. *Angell v. Rosenbury*, 12 Mich. 260, and cases there cited. Had the questions and answers related to the actual knowledge of the witness, the case might have been, perhaps, different. No respectable

authority can be found in the books permitting a cross-examination of a witness to stand in such a case as this. I am not disposed to overrule a desision of our own Court, in order to sustain this judgment, when justice and equity are against the holding of the circuit judge. Is it possible that a party can obtain, by deposition, an irrelevant or incompetent direct examination of a witness, upon which question of irrelevancy or incompetency there can be no ruling until the case is on trial, and upon such trial keep the cross-examination in, after the direct evidence is expelled, and use it in the cause, against the objection of the opposite party?

The defendant in this case was obliged to file her cross-interrogatories, or not examine the witness at all; and because the answers to such interrogatories were in favor of the plaintiffs, and the questions and answers in themselves proper, they are used against her, when if the main testimony had been offered in court and rejected, or taken orally and then stricken out, there would have been no necessity for any cross-examination, and none would have been allowed under all the authorities. The ruling of the court below, if sustained, forces a party, at his peril, if he deems the direct questions in a deposition incompetent, either not to put any cross-interrogatories at all, and have the evidence, perchance, admitted against him, without any cross-examination, or to cross-examine, and then have such cross-examination used against him when the witness is not permitted to give any direct evidence, the same being stricken out. There is no justice in such a holding, and I cannot consent to it. When the direct evidence is rejected, or goes out of the case, under circumstances as in this case, the cross-examination of such witness, who has given no testimony in the main, is not known in the law.

It is also claimed by defendant's counsel that this hypothetical question was not warranted by the facts, in the following respects, as the proofs show:

1. That the plaintiffs had nothing to do with the proof of the will, except that they were present merely.

2. There was no contest of the will as alleged, unless the cross-examination of proponent's witnesses in the probate court can be called a contest.

3. The plaintiffs took no part in the management of the business of the estate.

4. No appeal was taken to the circuit court, as alleged in the question.

5. Plaintiffs had nothing to do with the sale of the mill, lands, and personal property.

6. They had nothing to do with the settlement made by defendant with the heirs.

7. There were no services required of plaintiffs after such settlement.

8. Nothing was done in the probate court after the giving of a residuary bond, and the estate was not settled in such court.

The record itself appears to be contradictory. The testimony is not set out in full, but statements are made of what the evidence introduced by the parties tended to show, and some statements are made of what was and was not proven on the trial.

In the beginning of the bill of exceptions, upon the first page thereof, it is stated that—

"There was evidence given upon the trial tending to prove all the material evidence contained in the said question hereinafter set forth, and asked to the witnesses Russell, Atkinson, Dickinson, Baker, and Baker."

Yet the record also contains, in other places, the following statement:

"It appeared the defendant made said settlement with the heirs, sold said mill, and large amount of lands, all of her interests in said vessels and other property, amounting to about $300,000, without consulting the plaintiffs, and without advising with them in relation thereto; but Mr. Kelley was consulted. It also appeared that the only proceedings had in the probate court for the county of Alpena, in relation to said estate, were the petitions for the appointment of a special administratrix, and filing a bond therefor, the peti-

tion for and the proof of said will, and the order allowing said will, the appointment of appraisers, and the filing of an inventory and residuary legatee's bond; also the recording of the releases of the heirs. 　 * 　 * 　 * 　 There was no evidence that the plaintiffs were in any way engaged in the actual management of the business of the estate.''

The plaintiffs '' were present merely '' at the hearing upon the allowance of the will in the probate court. Such hearing lasted about three hours. The only contest shown was the cross-examining of the proponent's witnesses, the heirs not producing any witnesses. A notice of appeal was made, and a bond executed, but never filed in the probate court.

'' There was also evidence tending to prove that the said heirs were making an actual contest, and would have appealed the probating of said will if the said defendant had not settled with them before the expiration of the time limited for said appeal.''

This evidence was certainly in conflict with the facts as manifestly suggested by the question put to Russell and the others. The obvious meaning of the question would lead any one to believe that there was an actual and determined contest over the will in the probate court, in which the plaintiffs participated as attorneys for the defendant, and that they were consulted and advised in the business management of the estate, and had a part, as her attorneys, in the settlement with the heirs, and in the closing out and sale of the property, the converting of the estate into money, and turning the same over to the defendant. At the very least, the question is open to this construction of its meaning, and we cannot say that the witnesses did not so understand it.

In this connection the circuit judge was asked to instruct the jury:

'' 1. If you find the evidence in this case does not fully sustain the facts inquired in the hypothetical question, you will not give the answers to such question any effect, and not evidence of anything contained in such matters.

'' 2. If the testimony does not tend to establish every fact

embraced in the question, you will disregard the answers given."

These requests should have been given, or their equivalent. They are in accord with the well-settled doctrine of this State in regard to expert evidence, and the defendant was entitled to have the facts established before she could be harmed by suppositions based upon them.  *People v. Millard,* 53 Mich. 63 (18 N. W. Rep. 562); *People v. Hall,* 48 Id. 482 (12 N. W. Rep. 665) ; *People v. Sessions,* 58 Id. 611 (26 N. W. Rep. 291); *Railroad Co. v. Huntley,* 38 Id. 537; *Daniells v. Aldrich,* 42 Id. 58 (3 N. W. Rep. 253.

It is insisted by the plaintiffs' counsel that the last request given above was faulty, in not containing the word "material" before the word "fact."  It would hardly be the province of the jury, I think, to determine, without any instruction from the court, what were and were not the material facts in a hypothetical question.  But, be that as it may, it appears from a careful examination of the charge of the court that no reference whatever was made to the subject covered by these requests; and the jury were, therefore, by the refusal of the judge to give these requests, and by his failure to give them any instruction in reference thereto, authorized, in effect, to receive and weigh these answers in making up their verdict, whether they found the facts upon which they were based true or not true.

I also think the following request, or its substance, should have been given:

"The testimony of the witnesses sworn in this case as experts is not to be taken as binding your judgment as to the amount of plaintiffs' claim, but may be considered in aid of your judgment as to the amount the plaintiffs may be entitled to."

This request was refused, and no reference made to the value or effect of expert evidence in the charge. ,

Complaint is also made as to some of the questions per-

mitted on cross-examination of the experts testifying on behalf of the defendant, but I find none of them to be outside of the legitimate range of a cross-examination.

For the reasons above stated, I cannot consent to the affirmance of this judgment.

It seems to me that such affirmance will widen and expand the domain of expert evidence in this State, now too extended for the benefit of parties litigant and the general good, beyond any measure heretofore known to the jurisprudence of our country, and to the great evil and detriment of the due and equitable course of justice in the future.

The judgment ought to be reversed, and a new trial granted.

SHERWOOD, C. J., concurred with MORSE, J.