DAVID KINNEY v. FOLKERT C. FOLKERTS ET AL.

[See 78 Mich. 687.]

*Master and servant — Negligence — Trial — Evidence — Measure of damages.*

1. The legal questions presented by the record in this case, except as hereafter noticed, are held settled by the former opinion, reported in 78 Mich. 687.

2. The refusal of the court in a negligence case to permit the defendants to run a "blower" used in the planing-mill in which the accident occurred, and which the jury were permitted to examine, in their presence, is not an abuse of discretion, it appearing that its construction had been altered since the plaintiff was injured by putting his arm into it when in operation.

3. Testimony by which it is sought to corroborate witnesses as to

the condition of machinery at the time of an injury, by showing in what condition the witness found it a week afterwards, is properly rejected.

4. Parties cannot remain silent, anu thereby lie in wait to ground error, after the trial is over, upon a neglect of the court to instruct the jury as to something which was not called to its attention on the trial, especially in civil cases.

5. The charge of the court on the question of damages as measured by the life expectancy of the plaintiff is held not open to the objection that it misled the jury so that they gave plaintiff what he had lost by his inability to labor between the time of his injury and the trial, and then included the same time in their calculation as to his future loss.

Error to Alpena. (Kelley, J.) Argued January 15, 1891. Decided February 27, 1891.

Negligence case. Defendants bring error. Affirmed. The facts are stated in the opinion, and in 78 Mich. 687.

*Frank Emerick* (*J. C. Shields*, of counsel), for appellants.

*Turnbull & Dafoe* (*Depew & Rutherford*, of counsel), for plaintiff.

[Briefs confined to a review of the testimony and points stated in the opinion, no authorities being cited.— REPORTER.]

MORSE, J This case has been in this Court before, and will be found reported in 78 Mich. 687. A full statement of the facts, appearing on the first trial of the case, will be found in the opinion of Mr. Justice LONG, there published. Upon a second trial in the Alpena circuit court, the plaintiff has again recovered a judgment of $5,000, and the defendants bring error.

There is but little difference in the testimony of the two trials, and we shall refer only to such differences as are claimed by defendants' counsel, and such other facts

as may be necessary in determining the question whether or not any error was committed on the last trial warranting a reversal of the judgment. The plaintiff's counsel insist that the whole case, upon the evidence, is substantially the same as upon the first trial, and that the law of our former opinion must govern the case now here. If it be true that there is no substantial difference in the case of the plaintiff as made by the testimony in his behalf on the two trials, then it must follow that the question as to his contributory negligence was properly submitted to the jury on the last trial, as we held that such question was rightfully submitted to them on the first trial. The only differences pointed out to us by defendants' counsel are two, to wit:

1. On the last trial plaintiff testified that he looked up as he went in to see.if the blower was running, while on the first trial he did not say anything about looking at the blower for that purpose.

2. On the first trial he testified that he had the elbow of the pipe on his arm when he fitted it to the blower, while on this trial he says he fitted the pipe on the blower before he put his hand in.

As regards this last difference in his testimony, we cannot see that it would make any difference, as a matter of law, in his negligence, which statement was correct. The argument that he would be more liable to feel the suction of the blower in motion in the last case than in the first, and consequently be advised that the blower was moving, is one for the jury. I do not think that a court, some of whom never saw a blower, either stationary or in motion, are authorized to hold as a matter of positive law that plaintiff must have felt this suction in time to acquaint him of his danger and to prevent it. Nor do I think the records in both cases bear out the assertion that there was any difference in his statement in this respect between the first and last trial. See *Kinney v.*

*Folkerts,* 78 Mich., at page 692, where plaintiff's direct testimony is quoted on the first trial. He says:

"We both run right in quick, and *I took this elbow and stuck it on the blower, and had the bolts in my hands, and jumped onto a horse, and run my hand right in the blower.*"

The plain inference from this testimony is that he put the blower on first, and then jumped upon the horse, and ran his hand into the pipe and into the blower.

In relation to his looking up at the blower as he went in, his testimony is that he took a "quick glimpse" at the machinery of the blower as he rushed in, and it looked just as he had left it. It must be remembered that the plaintiff, as he testifies, was out of the building at work. The blower had been stopped, and was not running when he left it. It was not to be run again until he had fixed the pipe, and he supposed that it was still. McNally, one of the defendants, while plaintiff was working under this supposition, comes to him, and says:

"Come in quick, we are out of shavings in the engine-room, *and I want to start that blower;* come in quick."

Plaintiff, again advised by this statement that the blower is stationary, rushes almost on a run into the mill, filled with the clash and noise of other machinery in motion, as well as the blower; casts a hurried glance upwards; everything seems all right, and as he left it, and he claps the pipe upon the opening of the blower, and runs in his hand to fit the bolts, and is injured. All this is the work of a moment, and under the idea that there was no danger; and there would have been none, if the blower had been in the condition he was led to suppose it was by the acts and *words* of one of the defendants. If the statement of the plaintiff is a true one, he was thrown off his guard, and it was for a jury to say whether an ordinarily prudent man would have

done as he did under like circumstances; and the fact that he took a "quick glimpse" of the blower, as he rushed in in the hurry of the moment, cannot alter the case so as to take it out of our former ruling, that the question of his negligence was for the jury. The theory of the defendants, as opposed to the story of the plaintiff, is that the blower was not stopped at all that morning, and that plaintiff was not led in any way to believe that it was not running; that he had no call from McNally or any one to go near the blower, and yet that he deliberately walked into the mill, went around to the blower, got upon the horse, and, steadying himself with one hand, put the other, without any cause or known reason, into the opening of the blower, and thereby lost his fingers. Having to make a choice between these two theories as to the facts, it is not at all surprising to one having any knowledge of human nature that the plaintiff has recovered two verdicts.

The argument, which was the main contention here. that the plaintiff was negligent in law, must be considered, therefore, settled by our former opinion, and the question of fact has been settled by the jury. We also think that the negligence of the defendants was properly submitted to the jury, who have also settled that question against them.

The court permitted the jury to examine the mill, but would not allow the defendants to run the blower in their presence. As the blower was not constructed the same as when the plaintiff was injured, it having been altered considerably since that time, we think there was no abuse of discretion in the court's action. It is complained that the court erred in refusing the evidence offered to be shown by a witness, Henry Michaels. He was asked, after he had testified to the changes that had been made in the blower since plaintiff had been hurt, if,

before such changes, and after October 15, 1888, the plaintiff being injured on the 8th, he had occasion to use and handle the blower. This was objected to, and then defendants' counsel offered to show by the witness that on October 15, 1888, and about a week after the accident to plaintiff, and when he came to defendants' mill for the purpose of investigating the blower,—

"He had occasion, in testing and using the blower, to put up and take down this box and elbow, and that he found it at the time fastened up there with nails, and used it in that way himself.

"*The Court:* Do you think that would be any evidence that it had been used in that condition prior to the 8th of October?

"*Mr. Emerick* (defendants' counsel): Yes, I do.

"*The Court:* I will give you an exception."

The defendants claimed that this temporary elbow or pipe, which the plaintiff claimed he was putting on the blower when he was injured, at the time was permanently fastened into a wooden box, thereby forming a continuous pipe about $7\frac{1}{2}$ feet in length, which, if true, would preclude the plaintiff from running his arm through it, as he claimed he did, when he was attaching it to the blower. The plaintiff testified that the box was not attached to it when he used it. By this proposed testimony it was sought to corroborate defendants' witnesses as to the condition of this pipe and box on the day of the injury by showing how Michaels found it a week afterwards. The very statement of the proposition shows its absurdity. The court was right in rejecting it.

Plaintiff testified that, as soon as he was hurt, he threw down the elbow, and walked rapidly to where McNally was standing in the mill.

"I asked him whether he would walk up town with me to some doctor. I was not acquainted with the doctors, and he would oblige me to go up. Says I: 'We can take your horse.' Says he: 'No.' Says I: 'The team

has just come in.' Says he: 'I haven't got time; you have got strength, go yourself.' The idea of that is he wouldn't be humane enough to go with me. He refused. He ought to have done it."

No objection was made to any of this testimony, and no motion made to strike it out, but the counsel for defendants requested the following charge in relation to it:

"Even if McNally did refuse to go with or send plaintiff to the doctor, that fact is immaterial, and should not be considered, except as bearing upon his credibility."

This conversation of plaintiff with McNally is denied by the latter, but it is claimed by defendants' counsel that this testimony of Kinney's was used by plaintiff's counsel on the argument to the jury to show that McNally was brutal and inhuman, in thus refusing to go with plaintiff to a doctor or to send his team with him. We find, however, nothing in the record to support this claim, and we cannot assume anything not found therein. The court made no allusion to this testimony in his charge, and did not give the request. The request was proper enough, but we cannot consider the failure to give it as prejudicial error. The damages found by the jury are not excessive, under the testimony, and the circumstance that juries have twice found with plaintiff, and for the same sum, seems to be conclusive that the failure to give this instruction had no weight in the determination of the case, as no complaint in reference to this testimony, or of any use made of it, was brought to our attention when the case was here before. And yet the result is the same on both trials, even to the amount of the damages.

The rule of damages was properly laid down. It is claimed that the court erred in counting the plaintiff's

expectancy of life from the date of the injury instead of the date of the trial, a difference of one and one-half years; but it will be seen, by examining the charge, that the element of damage resting upon this expectancy of life reached back at least until the time when his hand had healed, and such damages were not permitted to be recovered twice, unless it might be for the time when he could do no work at all, which was about two months; but we do not think the charge is open even to this objection. The court authorized the jury to take into consideration three elements of damages:

*First*, what·he had paid out for doctors' bills, medicine, and nursing; *second*, compensation for the pain and suffering.

As to the *third* element, the court said:

"You are also to consider, as a third element of injury for which the plaintiff would be entitled to recover, if you find for him upon the propositions of fact under the instructions given you, the loss of time and the disability occasioned by the alleged injury. The loss of time would consist in the actual loss from the time of the accident or injury until he was restored to health, or until the wound was healed. You should also consider the disability entailed by the accident, actual loss of his services, his inability to work, to attend to his ordinary business or trade, and you should consider the extent of his injury. To what extent does this injury deprive him from pursuing his avocation, and earning the usual compensation or wages therefor?   *   *   *   It is difficult, if not impossible, to give you any definite or well-defined standard from which to measure the loss or injury he may have sustained. The question as to what amount the plaintiff should be awarded rests largely in your sound·discretion. You should consider, however, on this branch of loss and injury, the occupation of the plaintiff, his ability to earn wages before the· accident or injury, and the extent to which such ability to earn wages has been diminished or lost to the plaintiff. You may consider the age of the plaintiff and his reasonable expectation of life, which is shown by the evidence to be 36

years; also his habits of industry and temperance. You should also consider the contingencies of a much shorter life. The plaintiff may not live to the full period of expectancy. Also you should consider the contingencies of sickness and inability to secure employment at all times, as well as the fluctuations in value and demand of his services, and you should make a reasonable deduction for these contingencies. Whatever you may determine to be his actual injury or loss of services, or inability to earn wages, you can in no event award him a greater sum for this element of injury or loss than the present worth of such loss. Understand me, gentlemen, the actual outlay and expense that he has incurred in treating and nursing and medicine should be allowed him, if he is entitled to recover. It is at your discretion to give such an amount as you may think right for mental suffering, and for physical pain and suffering. The actual loss of time while he was sick and unable to work should be awarded to him; but when you come to consider beyond that the disability that he has sustained, which may extend into the future, you are to determine as best you can the extent of that disability, and the injury that he has sustained,—may sustain in the future,—and, when you have determined that as near as you can in your judgments, that amount is not to be, and should not be, the measure of your verdict, but the present worth of it. I suppose you all understand what the present worth of a given sum means. It is arrived at by dividing a given sum by one dollar, plus the legal rate of interest, or usual rate of interest, for the given time."

Under this charge, we do not think the jury were misled so that they gave plaintiff what he had lost by his inability to labor between the time of his injury and the trial, and then figured the same time in their calculation as to his future loss.

It is also contended that the method of obtaining the present worth of a sum of money falling due each year for a given number of years was not sufficiently explained. No fault is found with what the court said, as far as the charge went. Nor was any other instruction on this subject suggested or requested. If the defendants desired

fuller instructions, it was their duty to have asked them. Parties cannot remain silent, and thereby lie in wait to ground error, after the trial is over, upon a neglect of the court to instruct the jury as to something which was not called to its attention on the trial, especially in civil cases. The testimony shows that, previous to the accident, the plaintiff was a boiler-maker, earning from $3.25 to $3.50 per day. His hand was disabled, so that he can work at his trade no longer. He has worked at peddling newspapers, and anything he could get, since, and had earned about $300 in a year and a half. Being 29 years of age at the time of the accident, with an expectancy of life of at least 35 years, it requires but little calculation to show that the verdict is a reasonable one, and that the defendants cannot complain that it is excessive.

The judgment is affirmed, with costs.

The other Justices concurred.