DUFFY v. CHARTERS.

1. PHYSICIANS AND SURGEONS — MALPRACTICE — EVIDENCE—HYPOTHETICAL QUESTION.

   In an action against a physician for malpractice, the trial court did not err in permitting plaintiff's counsel to ask of a medical witness whether the treatment, which plaintiff's evidence disclosed was adopted, was a proper method, although defendant's witnesses denied that such method was used and claimed other treatment was employed, and their claims were not included in the hypothetical question.

2. SAME—PLEADING—VARIANCE.

   Under plaintiff's declaration, alleging that the defendant neglected to use proper skill and care in setting plaintiff's collar bone and broken clavicle, and failed to bring the ends of the bones in apposition and to employ proper means for placing and keeping them in position so that the shoulder and said bones became deformed, diseased, that the bones were allowed to overlap, etc., evidence

that a fibrous union of the bones resulted was not a fatal variance and tended to support the declaration.

3. SAME—DAMAGES—PAIN AND SUFFERING.

Plaintiff was also entitled to recover damages for extra pain and suffering which he may have sustained because of the improper treatment, but he was not entitled to recover for the discomfort and pain which would in any event have resulted from the broken bone under proper treatment.

Error to Charlevoix; Mayne, J. Submitted April 8, 1914. (Docket No. 7.) Decided June 1, 1914.

Case by Matthew Duffy against John Charters for malpractice and negligence in treating injuries of plaintiff. Judgment for plaintiff. Defendant brings error. Affirmed.

*A. G. Urquhart (J. M. Harris,* of counsel), for appellant.

*Mesick & Miller,* for appellee.

KUHN, J. The plaintiff was employed as a common laborer by the city of Boyne City to work in the construction of sewers, and on August 30, 1910, he was injured by the caving in of the earth while engaged in this work. The defendant, a regularly licensed physician and surgeon in the general practice of medicine and surgery in Boyne City, was called to the plaintiff's residence, and found him suffering from an oblique fracture of the left clavicle. It is the claim of the plaintiff that the defendant did not reduce the fracture properly; that there has been no proper union of the bone; that there has been a shortening of the bone; and that, as a result, the use of his arm is greatly impaired. A suit for malpractice was brought, and a verdict and judgment for $1,080 was had. Defendant brings the case to this court by writ of error.

The first contention argued by defendant's counsel in his brief is that the court erred in overruling defendant's motion for a directed verdict, and it is insisted that there was no question of fact to submit to the jury. The plaintiff's claim is, and he supported it by his own testimony and that of two others who were present, that when the defendant came to the house all he did was to pick up plaintiff's arm and place it diagonally across plaintiff's breast so that the points of the fingers of the left hand were against the lower part of the right shoulder, above the armpit and below the top of the shoulder; that thereupon he applied bandages, which the defendant claims was done in the approved method known as Sayre's dressing, but, it is claimed by plaintiff, was not done as Sayre's method requires. Whether the defendant was negligent in that he did not use a proper method in reducing the fracture presents the question in issue in this case.

The following hypothetical question was asked of Dr. Shaver, a witness produced on behalf of the plaintiff:

"If a man 52 years of age was injured by the caving in for a sewer in which he was working, and taken directly to his home and within an hour from the time of the injury a doctor was called and diagnosed the injury as a broken clavicle of the left shoulder, and thereupon proceeded to reduce the fracture by placing the left forearm diagonally across the breast in such position that the ends of the fingers of the left hand reached the front of the right shoulder between the armpit and the top of the shoulder, the ends of the fingers reaching the shoulder joint, and securing the arm by means of bandages, would this treatment properly reduce the fracture and secure a union of the fractured ends of the clavicle, in your opinion?

"A. In my opinion, no."

This hypothetical question is based upon what the lay witnesses testified was done by the defendant

when he put on the bandages. It is urged that the question is incomplete, and so insufficient as to have no value in assisting the jury in determining the defendant's responsibility. The question does not contain what the defendant claims he did in reducing the fracture, but does state substantially what plaintiff claims he did, as testified to by the witnesses present. Dr. Marshall described the proper method to be used in reducing such a fracture, as follows:

"In reducing the fracture and overcoming the deformity present in the case of a fractured clavicle, we have the shoulder pulling the outer fragment down and the muscles of the chest pulling it in. These two forces must be overcome by some method of lifting up the shoulder and pulling it outward to overcome the muscles in the chest that are bringing it in. The particular method may vary. Personally, I have them sit in a chair and have an assistant pull back the shoulder while I put on the dressing, or some form of retentive apparatus is usually applied, and that varies with the particular surgeon's wishes. Some use one form and some another. No matter what method is employed, the object to be attained in order to get the bones in apposition is to overcome the tendency of the muscles to draw the shoulder inward and the weight of the shoulder to hold it down. It is necessary, in order to get the bones in apposition, that the tendency of the muscles to draw the shoulder inward and the weight of the shoulder to hold it down be overcome. The clavicle acts as a brace, and when the brace is broken the shoulder swings forward. The ends then override or pass each other, if it is a complete fracture. It is necessary to get the ends of the bone together, and to do that, the shoulder must be put back there. And no matter what system is used, all systems must get the ends of these bones together, and under the circumstances, they can't come together unless the shoulder is held back or put back. When the shoulder is placed back and the bones are nearly in apposition as the physician can get them, then the immediate problem is to hold the shoulder there. In order to do that some kind of retentive apparatus is used. In Sayre's method the idea is to fasten the arm

back and lift the elbow. One strip is put on the arm and attached to the back, and then, using that as a fulcrum, the point of the elbow is brought forward by another piece of plaster and passed over the shoulder."

The testimony of the experts being based on the testimony of plaintiff's witnesses, it was proper to have their answers stand. The question of the value of their evidence and that of the other witnesses for plaintiff was for the jury, and was properly submitted by the trial court. *Fye* v. *Chapin,* 121 Mich. 675 (80 N. W. 797).

It is contended that there is a fatal variance between the declaration and the attempted proof of a want of proper union of the broken ends of the plaintiff's clavicle. The declaration charges:

"The said defendant then and there so negligently, carelessly, and unskillfully behaved and governed himself, in and about the care of said plaintiff, and in and about the setting, treatment and care of said collar bone or clavicle, disrupted, fractured, wounded, and bruised, in not properly setting the same, and not using the proper care, attention, medicaments, appliances, and skill in the treatment of said collar bone or clavicle, that by and through neglect, carelessness, default, and the unskillfulness of said defendant, as such physician and surgeon, the said plaintiff was, and still is, caused to suffer great and excruciating pain in his shoulder, and his said shoulder was caused to become greatly swollen, inflamed, and diseased, to an unnecessary extent, and the bones so disrupted, broken, fractured, wounded, and bruised, were caused and allowed to override and overlap, and the said shoulder to become greatly deformed and diseased, and does still so remain, and the general health of the said plaintiff greatly impaired, weakened, and ruined; * * * yet the said defendant did so negligently, unskillfully, and carelessly treat the said plaintiff that by reason of his neglect, unskillfulness, and carelessness, and by reason of his failure to put the bone or bones of said shoulder properly in apposition, and to use the proper means for so placing and keeping said bones in apposition, and by reason of his

failure to use the proper appliances, at the proper time, in the treatment of said shoulder, and also by reason of the gross neglect and inattention of the said defendant in not thoroughly examining and properly treating the shoulder of said plaintiff, his said shoulder became useless and diseased, and is left uncured," etc.

It is the plaintiff's contention that the false or fibrous union shown by the proofs is the natural result of imperfect apposition, as set forth in the declaration, and that it was therefore not necessary to specifically allege it. This is supported by the testimony of the physicians, who testified that the first step in the treatment of such a fracture is to get the ends of the bone together and keep them there, if possible, and, unless this is done, no perfect union results. We think the declaration was sufficient to warrant receiving this evidence, under authority of *Groat* v. *Railway,* 153 Mich. 165 (116 N. W. 1081), and cases cited therein.

Complaint is made that the court erred in submitting to the jury the question of compensation for extra pain and suffering. With reference thereto the court said:

"For the pain and suffering which the plaintiff would have actually sustained by reason of this broken clavicle and its treatment, if properly treated, he cannot recover in this case, because the defendant is not responsible for that; that he had to sustain anyway. But for the pain and suffering which was extra, if any, which was caused by the defendant, plaintiff can recover, and only so much as was caused by defendant, that which has already been sustained by him, and that which he will sustain in the future, if you find that he will sustain pain in the future. You will see that it is any extra pain and suffering which he would not have sustained had it been correctly treated for which he can recover."

Under the issue in this case, it was entirely proper to submit this question to the jury.

We have examined the other assignments of error, but find them without merit. The learned trial judge submitted the case to the jury in a careful charge, and, finding no prejudicial error in the record, the judgment of the trial court is affirmed.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.