WILK *v.* BLACK.

1. PHYSICIANS AND SURGEONS — MALPRACTICE — NEGLIGENT TREAT-
MENT.

Where plaintiff, after sustaining a fracture of his left arm,
employed defendant to reduce it, and after wearing the
splints two weeks found, as he claimed, a bunch on the
inner side of the arm, caused by defendant's failure to
properly treat it and where there was evidence of a
medical expert that the splints used by defendant were
too short, the court did not err in submitting to the jury
the question of fact as to malpractice, though defendant
disputed the claim of plaintiff.

2. SAME.

And where defendant's counsel, at the trial, made no com-
plaint that the court had omitted any instructions to the
jury, and there was testimony tending to show want of
sufficient skill, the charge submitting to the jury the
question of negligence in possessing or exercising rea-
sonable skill was not open to objection, on error.

3. DAMAGES—WEIGHT OF EVIDENCE—EXPECTANCY.

There was no abuse of the discretion vested in the trial
court in denying defendant a new trial on the ground of
excessive damages upon testimony tending to show that
his expectancy was upwards of forty years, and that the
arm was crooked, the verdict amounting to $2,250, in a
malpractice suit.

Error to Muskegon; Sullivan, J. Submitted April
15, 1915. (Docket No. 98.) Decided October 29, 1915.

Case by Edward Wilk against Benjamin F. Black
for malpractice. Judgment for plaintiff. Defendant
brings error. Affirmed.

*Cross, Vanderwerp, Foote & Ross,* for appellant.
*Nichols & Shaw* and *Charles G. Turner,* for appellee.

MOORE, J. This action was brought to recover damages for malpractice. On October 13, 1911, plaintiff, a farmer boy of 22 years of age, was thrown from a horse, thereby sustaining a fracture of the ulna and radius of the left forearm. The accident happened about 4:30 p. m. at a farm eight miles from the village of Holton, where the defendant was practicing his profession. Within two or three hours after the accident the defendant treated the fracture. Plaintiff returned the following Monday, when defendant examined the arm without taking off the splints and told the boy the arm seemed to be all right, and to be careful with the arm and come again in about two weeks. Plaintiff made his next and last visit to defendant on November 2d, at which time the splints were removed, the arm examined, and the defendant claims he found it to be perfect, the bones straight and in normal condition. Defendant assured the boy that the arm was coming on all right and directed plaintiff to come back again in two weeks and he would take off the splints. The plaintiff claims that at this time there was a lump on the arm.

The plaintiff testified:

"Why, he told me to come back in a week or two and he would take the splints off, and I told him it was quite a ways to come; if that was all that was necessary, if I could take them off myself; and he said I could, and I did at the end of two weeks' time."

Defendant testified:

"I told him to come back in two weeks again, and he said to me, 'Now, Doctor,' he said, 'it is a long ways from my place up here'—he lives down here near Muskegon, nearer Muskegon than Holton, between Muskegon and Holton—and he said, 'What will be the matter with me taking those splints off in two weeks' time, and if the arm is all right, will it be necessary for me to come back? Well, with the arm in the condition it was in when I saw it, I said to him, 'In two weeks' time you can take those splints off if you want to and

if you are satisfied the arm is all right, you needn't come back; if you aren't, I want you to come right back'; and he told me he would."

.Plaintiff never returned to defendant until several months thereafter, when he came to demand a settlement, being accompanied by his attorney, who exhibited an X-ray plate showing a shadow picture of the plaintiff's arm taken on May 13, 1912, which plate was produced in the Supreme Court upon the argument.

Plaintiff claims to have worn the splints continuously from the time of his last visit to defendant until the morning of November 28th, when he took them off and discovered a bunch on the inner side of his arm, and immediately went to consult Dr. Thomas, at Muskegon, who examined the arm and found a prominence of from one-half to three-quarters of an inch high, which he supposed to be an enlarged callous. Dr. Thomas recommended an X-ray examination, put a leather band on the arm to be worn in the meantime, and told plaintiff to go at once to Dr. Black and show him the arm. This, however, plaintiff failed to do, claiming that he had lost confidence in defendant, and on cross-examination he stated he had heard of other instances where the defendant had done poor work.

The defendant claimed he had properly treated the arm, and that its condition when suit was brought was caused by one of three things: (1) That plaintiff injured his arm by working after the injury; (2) that plaintiff injured his arm while it was in splints on the way home from a dance; (3) that plaintiff removed the splints himself, and thus caused the injury. The defendant offered testimony tending to show the truth of these claims. The plaintiff denied that any one of them was true.

The trial judge charged, after stating the claims of the respective parties, in part as follows:

"Now, I will say to you, gentlemen, that when a patient goes to a doctor and accepts the professional skill of a doctor, it is the duty of the patient to follow the advice of the doctor, and if he fails to follow the advice of the doctor and something untoward happens to the patient which would not have happened or which was not the result of the doctor's negligence at all, if something untoward happens to the boy, in such a case as that the doctor wouldn't be liable. It is the duty of the plaintiff to show you by a fair preponderance of the evidence that the injury, if any, to his arm, was not caused by any fault on his part after the arm was set. The burden rests upon the plaintiff all along through.   *   *   *

"I instruct you that, if a person holds himself out to the public as a physician and surgeon, he must be held to possess and exercise ordinary skill, knowledge, and care in his profession.   *   *   *   And where an injury results from a want of ordinary skill or attention in the treatment of a case the physician or surgeon is held responsible for such injury. You should notice that I said the physician should exercise the ordinary skill, knowledge, and care required of men in his profession in his treatment. The physician is not required to possess or exercise the highest degree of care and skill known to the profession in order to relieve him from liability; only reasonable care and skill is required, that is, such care and skill as is possessed by men of his profession in general, and I will add to that at least the average degree of knowledge and skill possessed and executed by the members of their profession generally in the locality in which they practice.

"If Dr. Black did not treat the plaintiff with such ordinary care and skill as I have defined to you, he would be guilty of negligence, and if damage resulted therefrom without fault or negligence on the part of the plaintiff, the plaintiff would be entitled to a verdict at your hands. Should the evidence fail to show that the defendant did not exercise ordinary care and skill in the work he did for the plaintiff, then he would not be guilty of any negligence, and your verdict should be for the defendant."

The jury returned a verdict in favor of the plaintiff in the sum of $2,250. A motion for a new trial was made and denied. From a judgment on the verdict the case is brought here by writ of error.

The important question is: Was there evidence of negligence sufficient to carry the case to the jury? The law which should govern cases of this character is not new to this court. It is stated in various ways in *Hyatt* v. *Adams*, 16 Mich. 180; *Hitchcock* v. *Burgett*, 38 Mich. 501; *Brown* v. *Marshall*, 47 Mich. 576 (11 N. W. 392, 41 Am. Rep. 728) ; *Farrell* v. *Haze*, 157 Mich. 374 (122 N. W. 197) ; *Rogers* v. *Kee*, 171 Mich. 551 (137 N. W. 260), and the very recent cases of *Duffy* v. *Charters*, 180 Mich. 572 (147 N. W. 541), and *Miller* v. *Toles*, 183 Mich. 252 (150 N. W. 118, L. R. A. 1915C, 595). The questions involved are not so much law questions as they are of fact.

The defendant, when testifying in his own behalf, described the fracture:

"Why the arm was bent, as I said yesterday, a green stick fracture. * * * The bones were not broken off; it was not a complete fracture. They were bent. * * *

"*Q.* And what opportunity was there for the bandage to slip or loosen?

"*A.* I don't think there was any.

"*Q.* Whether or not there was sufficient swelling of the arm at that time that when the swelling again reduced it would loosen the bandage?

"*A.* There was not.

"*Q.* Was the swelling a perceptible one at the time you reduced the fracture?

"*A.* No, sir."

On the recross-examination he said:

"There was scarcely any swelling in the arm when I first saw it; I would say none. In a green stick fracture there is very seldom much swelling. There isn't the same irritation that there is in a dry stick fracture. In Mr. Wilk's case there was practically no swelling."

The X-ray picture showed a complete fracture of the bones, and defendant introduced testimony to which reference has already been made which, if true, might account for this contention, even though the fracture was a green stick fracture; but plaintiff introduced testimony disputing in the most positive terms this testimony. There was testimony of an expert that the splints used were not long enough. We have already referred to the testimony of the plaintiff as to the condition he observed at the last visit, when he was assured his arm was all right. We have not overlooked the claim that he gave a different version of what occurred. Without stopping to go into detail, we think the court very properly concluded there was a case for the jury.

Some criticism is made of the charge of the court. We quote from the brief:

"We especially complain that the court erred in charging and instructing the jury as follows: 'The plaintiff claims that he engaged Dr. Black to set the bones in his arm, that the doctor, owing to the lack of skill such as an ordinary physician and surgeon practicing his art should have, did not properly set the bones in the arm, and so in undertaking to set it he was negligent, because he did not possess the requisite skill such as a doctor should have.' By this and subsequent language complained of in our assignments of error on this branch of the case the jury were left to determine, as a disputed question of fact, a matter with respect to which there was no evidence whatever."

We have quoted other portions of the charge.

Counsel did not proffer any written requests. Nearly at the conclusion of his charge the judge inquired of counsel, "Is there anything I have overlooked?" and there was no suggestion made by counsel for appellant that the court had not properly charged the jury in relation to the skill of the doctor. We cannot agree with counsel in his claim that the skill of the doctor

was not in issue. It was put in issue by the pleadings. It has already appeared that there was testimony that when he first set the arm he used splints that were too short. There was also testimony that on the last visit the plaintiff made the doctor assured the plaintiff his arm was all right, when, in fact, a bunch or prominence had appeared upon the arm showing it needed further attention. The doctor testified the fracture was a green stick fracture. The plaintiff testified he had done nothing to change the character of the fracture, while the X-ray plate showed a complete fracture.

There was no reversible error in the charge.

Should a new trial have been granted because the verdict was excessive? There was testimony that the arm would always be crooked. The expectancy of the life of plaintiff was 40 years or more. We cannot say the trial judge abused his discretion. *Turnbull* v. *Richardson*, 69 Mich. 400 (37 N. W. 499) ; *Kinney* v. *Folkerts*, 84 Mich. 616 (48 N. W. 283) ; *Shaw* v. *Railway Co.*, 123 Mich. 629 (82 N. W. 618, 49 L. R. A. 308, 81 Am. St. Rep. 230) ; *Retan* v. *Railway Co.*, 94 Mich. 146 (53 N. W. 1094).

Judgment is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.