LOUISVILLE & N. R. CO. v. BURNS.

(Circuit Court of Appeals, Sixth Circuit.    June 5, 1917.)

No. 2971.

1. APPEAL AND ERROR ☞1039(16)—HARMLESS ERROR—RULINGS ON PLEAS IN ABATEMENT.

In view of the rule in Tennessee that a plea in abatement based on the pendency of another action must be overruled, where the former suit is dismissed after the filing of the plea, any error in overruling such a plea was cured, where, immediately upon the overruling of the plea, plaintiff's counsel stated in open court that plaintiff elected to proceed with the suit in which the plea was filed, and the court thereupon directed that the record should show that plaintiff elected to proceed with that case and to dismiss the former action, and the statutory lien in favor of the attorneys in the former suit did not prevent this action being taken.

2. CARRIERS ☞352—LIABILITY FOR ACTS OF AGENT.

Liability of a carrier for the act of its special officer in ejecting plaintiff depends upon whether he was acting within the general scope of his employment, and it is not necessary to liability that the act done was in the proper performance of duty, nor is the fact that the act was an abuse of authority enough to relieve defendant from liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1412–1414.]

3. CARRIERS ☞381(4)—EJECTION OF PASSENGERS—EVIDENCE—AUTHORITY OF EMPLOYÉS.

In a passenger's action for wrongful ejection from an excursion train by the special officer in defendant's employ, evidence held sufficient to warrant a finding that the special officers on such train had authority, express or implied, to eject those seeking to ride without tickets, or to ride after their place of destination was reached, and that the officer in question was claiming to exercise such authority.

4. WITNESSES ☞383—IMPEACHMENT—INCONSISTENT STATEMENTS.

In a passenger's action for wrongful ejection from an excursion train by a special officer in defendant's employ, it appeared that there were two and probably three officers on the train, besides a village marshal, who, though a passenger, took part in keeping order. The marshal testified that he wore a Panama hat, but the evidence did not show that none of the other officers wore Panama hats. Plaintiff testified that he did not remember what kind of a hat the officer ejecting him wore. *Held,* that evidence of statements by plaintiff that the officer in question wore a Panama hat was properly rejected, as, in the absence of testimony that

none of the officers in defendant's employ wore such a hat, the evidence was too remote to be of any value as impeachment.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1224.]

5. DAMAGES ☜167—EVIDENCE—LIFE EXPECTANCY.

In an action for injury to a farmer, 22 or 23 years old, who was previously sound in health and strength, and who suffered a compound comminuted fracture, resulting in the shortening of the leg about 2½ inches, and making it necessary to use crutches a year after the injury, tables showing his life expectancy were properly admitted, and the jury were properly told to consider his expectancy of life, though there was no testimony expressed in dollars of plaintiff's previous earning capacity, or of its proportionate impairment due to the injury, as it needs no expert testimony to show that such an injury impairs to some extent the earning capacity of a farmer, and the average jury are able to form a fairly accurate estimate of such earning capacity and its impairment, without expert testimony.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 487–489.]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Monroe Burns against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. W. E. Moore, of Brownsville, Tenn., for plaintiff in error.

Ike W. Crabtree, of Memphis, Tenn., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. Burns who was plaintiff below, was a passenger for hire upon defendant's excursion train from Keeling, Tenn., to Memphis, and return, holding a round-trip ticket therefor. He brought suit in a state court, charging that as the train on the return trip had just passed Mason (Keeling being beyond Mason) he was forcibly and wrongfully ejected from the moving train by a special officer in defendant's employ, connected with the handling of the excursion, sustaining serious injuries. The case was removed to the federal court because of diversity of citizenship of the parties. Defendant pleaded in abatement the pendency of a former suit in the same cause of action in another state court of Tennessee. It also pleaded issuably to the merits; the specific defenses being that plaintiff vountarily jumped from the train, or that, if ejected therefrom the one so ejecting him was not an employé of the defendant acting within the scope of his authority. At the opening of the trial the plea in abatement was called up and overruled. At the conclusion of the trial upon the merits under the plea in bar, defendant made a motion for directed verdict in its favor, which was denied, and the case submitted to the jury. There were verdict and judgment for plaintiff.

[1] 1. *The Plea in Abatement.* Plaintiff replied to the plea that the former suit was begun without his authority and that there had been no ratification; defendant announced that it was prepared to prove the authority. It seems to be assumed here that the plea was improperly overruled. But we need not consider that question, because, immediate-

ly upon the overruling of the plea plaintiff's counsel stated in open court that:

"Plaintiff says now, if there is such a suit pending there, he now elects to proceed with this suit here."

The court announced:

"Let the record show he stated in open court that he elected to prosecute this suit, and dismiss that one."

And again:

"Let the record show * * * that counsel for plaintiff here announced that he elected to proceed with this case, and dismiss the case in Haywood county."

We think whatever error was committed by the overruling of the plea was cured. It is the settled rule in Tennessee that a plea in abatement must be overruled, where the former suit is dismissed after the filing of the plea. Walker v. Vandiver, 133 Tenn. 423, 181 S. W. 310, in which case the court rejected the rule of the common law that a plea in abatement must be sustained, if true at the time it was filed, as opposed "to the general spirit of our legislation, which seeks to have all controversies determined upon their merits, rather than upon the technicalities of the formal procedure of the common law." In Turner v. Lumbrick, 19 Tenn. (Meigs) 7–13, cited with approval in Walker v. Vandiver, a plea of a former suit pending in a court held by other justices of the peace was treated as in effect overruled upon the plaintiff's having "elected, of record, to proceed in the present action, and released the defendants for all and every other action of forcible entry and detainer, except the present." It is urged, however, that in Walker v. Vandiver the dismissal had actually been made before the plea in abatement was disposed of, and that in the present suit such dismissal has never been entered in the court in which the suit was pending. The latter fact does not appear by the record in this court. However, in Turner v. Lumbrick the only proceeding of record by way of dismissal of the former suit was, so far as shown by the opinion, made in the second suit. In any event, we cannot doubt that plaintiff was, by the action taken in the court below, forever estopped from prosecuting the former suit. It is not to be presumed that defendant would experience any difficulty in procuring such dismissal upon bringing to the attention of the state court the record of the proceeding in the federal court. As said in Turner v. Lumbrick:

"If there was another suit pending for the same cause of action, this release might have been pleaded as an effectual defense."

The statutory lien in favor of the attorneys in the former suit was not a bar to the action had below. Tompkins v. Railroad, 110 Tenn. 157, 72 S. W. 116, 61 L. R. A. 340, 100 Am. St. Rep. 795. Whether such attorneys have a lien upon the judgment in this suit we are not called upon to determine.

[2, 3] *2. The Motion to Direct Verdict.* Plaintiff testified that there were three or four special officers upon the train, and that while plaintiff was standing on the platform of the car just before the train left Mason, one of these officers, wearing a star, ordered him to get off the train, and in spite of plaintiff's assurance that he had a ticket for Keeling again ordered plaintiff off, and immediately shoved him from the train, then in motion. This testimony was directly corroborated by another passenger on the same train, whose destination also was Keeling, who testified that he and plaintiff were standing together on the platform, when the officer said that plaintiff "didn't belong there," and asked the witness if plaintiff was not to get off at that place; that the witness assured the officer that such was not the case, and that both had tickets for Keeling; that the officer replied, "No, you get off here I know," and accordingly the witness jumped from the moving train, apparently just before plaintiff was shoved off. This testimony, so far as concerns the conversation between plaintiff and the officer and the shoving of plaintiff from the train, was substantially corroborated by a third passenger.

Defendant urges that the uncontradicted testimony shows that the special officers had or undertook to perform no duties on the train, except to assist in preserving order; that it is uncontroverted that plaintiff, when ejected from the train, was violating no rule and not misbehaving, and that the conduct of the officer was thus willful and wanton, wholly without the scope of his authority, and without the knowledge and consent of any of defendant's agents.

Defendant's liability for the act of its agent depends upon whether the latter was acting within the general scope of his employment. It is not necessary to liability that the acts done were in the proper performance of duty; nor is the fact that the act was an abuse of authority enough to relieve defendant from liability. Shadoan v. C., N. O. & T. P. Ry. Co. (C. C. A. 6) 220 Fed. 68, 72, 135 C. C. A. 636, 640. As said in that case by Judge Warrington:

"It is a familiar doctrine that the direct consequences of an agent's acts, done in the wrongful exercise of his authority and in the course of his employment, are chargeable to his master."

It was not the uncontradicted testimony that the officer's duties were limited to assisting in preserving order on the train; on the contrary, plaintiff testified, not only that the officer's occupation was "following the conductor and keeping order on the train, no loud talking and didn't allow any fussing or fighting to go on," but, as is evidently the meaning of his testimony, to see that people did not get on without tickets; and one of the other witnesses referred to testified that the officer in question had "been participating in assisting people off the train," and that he threatened to stop and put off some boys whom he thought disorderly. The defendant presented no testimony whatever respecting the duties of the special officers, except, first, that one of the officers sworn by defendant gave, on cross-examination, an affirmative answer to the question, "You were on there for the purpose of keeping order, wasn't you?" and, second, that the train conductor, in response to the

court's question, "Was there any man who was on the train, except the crew, that had been requested to help keep order, and see that quiet and proper conduct was maintained?" answered, "Yes, sir; that is what these gentlemen [meaning the officers] were carried on that train for;" and again, "I am always notified by the company as to whom to carry."

We think it was open to the jury to find, upon the record, that the special officers had authority, express or implied, to eject from the train those seeking to ride without tickets, or to ride after their place of destination was reached, and that the officer in question was claiming to exercise such authority in this case. We think that in his refusal to direct verdict for defendant the trial judge was amply supported by the decisions of this court, notably in Goodwin v. Traction Co., 175 Fed. 61, 99 C. C. A. 661, Lee Line Steamers v. Robinson, 218 Fed. 559, 134 C. C. A. 287, L. R. A. 1916C, 358, and Shadoan v. C., N. O. & T. P. Ry. Co., supra.

[4] 3. *Impeaching Testimony.* Plaintiff testified that the officer who ejected him was not in uniform (but wore a star), and that he did not remember what kind of a hat the officer wore or how otherwise he was dressed. He was not sure that he had seen the officer at the trial. Defendant complains of the exclusion of offered testimony of statements by plaintiff that the officer in question wore a Panama hat. The testimony makes it fairly certain that there were two, and probably three, officers in defendant's employ on the train besides a village marshal, who, although a passenger, took part in keeping order. The marshal testified that he wore a Panama hat, but no badge, and that he neither took part in nor knew of plaintiff's alleged experience. One other officer testified that he did not put plaintiff off, nor did he know of such occurrence. Had there been testimony that none of the officers other than the marshal wore Panama hats, the offered testimony might have had some relevancy. But while defendant's counsel, during plaintiff's cross-examination, announced his ability to make such proof, it was never definitely offered. In the absence of such testimony, the proposed evidence of impeaching statements was too remote to be of value, and was properly rejected.

[5] 4. *The Measure of Damages.* Defendant criticizes the admission of tables showing plaintiff's life expectancy, together with the instruction that in estimating damages there should be taken into account plaintiff's "earning capacity, his business, and his expectancy of life." The criticisms are not well founded. Plaintiff, who was colored, was 22 or 23 years old when the injuries were received, and the undisputed testimony is that he was previously sound in health and strength, and that he was a farmer by occupation. It is undisputed that he suffered a compound comminuted fracture of the femur, resulting in a shortening of the leg of about 2½ inches, that at the time of the trial (a year after the injury) he was still obliged to use crutches, because of the pain caused by their nonuse, that he had been unable to do any work since the injury, and that the shortening of the leg was permanent. There was no testimony, expressed in dollars, of plaintiff's previous

earning capacity, or of its proportionate impairment due to the injury. The record does not suggest that the lack of evidence in these respects was called to the trial court's attention, either in connection with the motion for directed verdict, or by request to charge, or on motion for new trial; but we think the average jury able to form, without direct testimony, a fairly accurate estimate of the earning capacity of a farmer of plaintiff's age, health, and strength. That such injury to the leg impairs to some extent the earning capacity of a farmer requires no expert testimony. The extent of such impairment is necessarily a matter of estimate only, and presumably a jury could intelligently determine that question without expert testimony. We cite in the margin several decisions more or less analogous.[1] Mortality tables have been frequently, and properly, admitted in cases of permanent injury not causing death or total disability.[2] The size of the verdict ($4,000) does not indicate that the jury had an exaggerated idea of plaintiff's loss of earning capacity.

The other criticisms of the proceedings on the trial we find it unnecessary to discuss. We have considered them all, and find nothing entitling defendant to complain.

The judgment of the District Court is affirmed.

[1] Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 181, 29 Sup. Ct. 270, 53 L. Ed. 453; Moran v. Railway Co., 74 N. H. 500, 69 Atl. 884, 124 Am. St. Rep. 994, 19 L. R. A. (N. S.) 920; B. & O. S. W. Ry. Co. v. Then, 159 Ill. 535, 539, 42 N. E. 971; Birkett v. Knickerbocker Co., 110 N. Y. 504, 508, 18 N. E. 108; Ft. Worth, etc., Ry. v. Robertson (Tex.) 16 S. W. 1093–1094, 14 L. R. A. 781; Murray v. Railway Co., 101 Mo. 236, 240, 13 S. W. 817, 20 Am. St. Rep. 601; Rosenkranz v. Railway Co., 108 Mo. 9, 16, 17, 18 S. W. 890, 32 Am. St. Rep. 588.

[2] See Vicksburg, etc., R. R. Co. v. Putnam, 118 U. S. 545, 554, 7 Sup. Ct. 1, 30 L. Ed. 257; Pierce v. Railroad Co., 173 U. S. 1, 10, 19 Sup. Ct. 335, 43 L. Ed. 591; C. & O. Ry. Co. v. Kelly, 241 U. S. 485, 491, 36 Sup. Ct. 630, 60 L. Ed. 1117; Kinney v. Folkerts, 84 Mich. 616, 624, 48 N. W. 283; Wilk v. Black, 188 Mich. 478, 484, 154 N. W. 561.