BANK OF COMMERCE & TRUST CO. v. QUIRK.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1922.)

No. 3665.

1. Executors and administrators ⬅206(3)—Recovery on quantum meruit for services held warranted.

Plaintiff, who without necessity rendered personal services in nursing, attendance, and companionship to decedent, to whom she had been engaged to be married, for 12 years before his death from cancer, his promise that, if she would do so and remain unmarried, he would leave her the bulk of his estate, which he failed to do, *held* entitled to recover on a quantum meruit.

2. Trial ⬅311—Amount of recovery.

Where personal services rendered were of such unusual nature that any estimate of their value by a witness would be a mere matter of opinion, and no better than the judgment of the jury, the jury may be left to determine such value from their own knowledge.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Western District of Tennessee at Memphis; Clarence W. Sessions, Judge.

Action at law by Mollie Quirk against the Bank of Commerce & Trust Company, executor of the will of Patrick Kallaher, deceased. Judgment for plaintiff, and defendant brings error. Affirmed.

J. W. Canada, of Memphis, Tenn. (Chas. P. Mooney and Edward P. Russell, both of Memphis, Tenn., on the brief), for plaintiff in error.

G. T. Fitzhugh, of Memphis, Tenn. (R. N. McMynn, of Milwaukee, Wis., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This proceeding in error is brought to reverse the judgment of the District Court in an action brought by Mollie Quirk, a resident and citizen of Milwaukee, Wis., against the Bank of Commerce & Trust Company of Memphis, Tenn., as executor of the estate of Patrick Kallaher, deceased, to recover the reasonable value of services rendered to Kallaher in his lifetime by the plaintiff during a period of 12 years next preceding his death, with the understanding and agreement between Kallaher and the plaintiff that he would pay her for such services.

The original petition sought to recover $400,000 under an alleged contract by the terms of which Kallaher had agreed with the plaintiff that if she would not marry any other person during his lifetime, perform such services, and remain devoted to him, that in consideration of the services and loyalty to be given to him by her he would bequeath and devise to her by will the bulk of his entire estate, which amounted to about $600,000.

A demurrer was sustained to this original petition upon the theory that, the contract being in restraint of marriage, was contrary to public policy and void. The plaintiff thereupon amended her petition, to which amended petition the District Court sustained a demurrer and dismissed the action. This judgment of the District Court was reversed by this court and cause remanded for trial. Quirk v. Bank of Commerce & Trust Co., 244 Fed. 682, 157 C. C. A. 130.

In reversing the judgment of the District Court, this court held that, while the petition did not state a good cause of action upon the contract, because an oral contract to devise real estate is within the statute of frauds, it nevertheless did state a good cause of action upon a quantum meruit, with which conclusion we are still content. After this cause was remanded, the plaintiff obtained in the District Court a judgment against the defendant as executor of the Kallaher estate for $25,000.

The plaintiff in error now relies upon two grounds for the reversal of this judgment: First, that no evidence was offered by the plaintiff tending to prove the value in dollars and cents of the services rendered by her to the deceased; second, that the court erred in not directing the jury, as a matter of law, that the $40,000 in bonds given to the plaintiff by the testator during his lifetime should be credited upon the value of any services she performed for him.

[1] The evidence in this case establishes a peculiar and extraordinary state of facts. Capt. Kallaher became acquainted with the plaintiff sometime prior to 1890, when she was but 16 years of age. He was then nearly 50 years old and in poor health. During the last 12 years of his life he was practically an invalid, and died in 1912 from cancer of the prostate gland. This trouble was of long standing, and was of such a disagreeable nature as to cause, in addition to the discomfort, a very offensive odor. This condition continued for at least 7 years prior to his death. The evidence further discloses that Capt. Kallaher and the plaintiff were in love with each other, and that they became engaged to be married in April of 1890, at which time he gave her a diamond bracelet, and later a diamond ring and a small pin; that her mother seriously objected to their marriage, not only on account of the discrepancy in their ages, but particularly on account of the captain's continued ill health. For this reason the plaintiff refused to marry him at that time, and, out of respect to her mother's wishes, refused or at least delayed marrying him after her mother's death until his physical condition became such that marriage was impossible, or at least inadvisable. It does not appear, however, that the engagement was ever broken, or that Capt. Kallaher ever entirely despaired of restoration to health, or to such condition of health as would make his marriage to plaintiff possible; that while suffering these disabilities to his immediate marriage Capt. Kallaher in 1900 asked plaintiff to promise him that she would not marry any one else so long as he would live, and that she would remain devoted to him in service and companionship as she had been in the past, and then and there agreed with plaintiff that, if she would promise so to do, in consideration of such promise and of the love and affectionate service and loyalty of herself and family, given and to be given to him, he would bequeath and devise to her by will the bulk of his estate.

The evidence tends further to prove that the plaintiff promised to do this, and, relying upon his promise and agreement to compensate her therefor, she fully performed her part of this arrangement and agreement to the entire satisfaction of the deceased, and by so doing largely contributed to his comfort, consolation, and happiness during the remaining 12 years of his life, but that Capt. Kallaher wholly failed to devise and bequeath to her the bulk of his estate or any part thereof. This evidence tending to establish this agreement was admitted for the sole purpose of proving that Capt. Kallaher expected to pay, and that plaintiff expected to receive pay, for the service, loyalty, sympathy, and companionship she gave him through all the years he was suffering the distressing ailments or complication of ailments that finally culminated in his death. Evidence was also admitted tending to prove that Capt. Kallaher was worth approximately $600,000; that he had no relatives dependent upon him for support; that many times he had declared his intention of giving one half of his estate to the plaintiff and the other half to the Little Sisters of the Poor; that the plaintiff is a cultured and accomplished young woman of respectable family, and no evidence was offered tending to prove that her financial need

required her to perform this character of service for any person at any price.

It is unnecessary to enter into detail as to the nature of the service performed by plaintiff for Capt. Kallaher. It is sufficient to say that it was of a character that must necessarily have been objectionable, if not revolting, to any woman of her culture and accomplishments. True, it was not a continuous service during the entire time of his illness, but she gave to him, whenever his whim, caprice, or his actual need required, affectionate care, nursing, companionship, entertainment, and sympathy; in fact, everything that an affectionate wife could give to a husband, except a husband's privileges in the more intimate relations of married life. In a word, she sacrificed, not only the best years of her life, but substantially the possibilities of her future, in order that she might be ready to respond to his demands for service and companionship, and bring into his life whatever of happiness was possible to him under the circumstances.

This evidence tending to establish the financial ability of Capt. Kallaher, his repeated declaration of his intention to pay and pay liberally for these services, her expectation to be paid therefor, the undesirable nature of the services she performed, and the lack of proof of financial need on her part to perform such service, tend strongly to the conclusion that it was neither his intention nor her expectation that the worth to him of her services and companionship were to be measured by any cheap or mean standard of comparison, or that he intended to pay, or that she expected to receive, therefor only wages that would compensate a professional nurse for mere professional services. From all the evidence in this case it is unthinkable that she would have accepted such service at such a price. However that may be, the value of whatever service of this nature she performed for him, that could have been performed by a professional nurse, is comparatively insignificant compared with the real and substantial service she rendered to him in other ways.

Afflicted as he was with an incurable disease, notwithstanding his large wealth, his life was barren and pitiful in the extreme. It is perhaps true that neither of them fully realized the impossibility of his ultimate recovery and lived in the hope that eventually they would be married. However that may be, he loved this woman, and she was the only one who, by her affectionate service, sympathy, companionship, and consolation, could bring any substantial happiness to him during the few years he had yet to live. In order that his life might have this happiness, sympathy, service, and companionship, he asked and permitted her, upon promise of compensation, to forego the pleasures and recreations that youth is entitled to enjoy, and sacrifice, not only any prospects or possibilities she may have had for an independent career for herself along the many avenues of industry or art that were open to a woman of her age and natural and cultural endowments, but also her prospect of a happy marriage with a man of her own age, and she in turn met and measured up to every requirement of his demand, but he failed to keep his promise to compensate her for this sacrifice she made for his happiness in manner and form as he had agreed to do,

and because that contract cannot be enforced she is now compelled to resort to an action to recover upon a quantum meruit.

It is said, however, that she performed these services for him and gave him this companionship that he craved because she loved him, and that therefore she cannot recover for any services prompted by her affection. No doubt her affection for him was the moving cause that induced her to enter upon this service even at the price he offered to pay therefor. Undoubtedly it was his love for her and his happiness in her companionship that induced him to make the proposition. These facts, however, tend only to show how personal this arrangement was, and how impossible it would have been for either to have entered into a similar arrangement with any other person. It by no means prevents her from recovering the value of the service she gave, and for which she expected to be paid, and for which he agreed to pay.

[2] It is apparent, therefore, that under the peculiar facts of this case expert evidence as to the value of these services would have been impossible. Her services were of a character so unusual in human affairs as to preclude the possibility of expert knowledge of their value. Any estimate of value given by a witness would be a mere matter of opinion, and no better than the judgment of the jury, whose duty it is in all such cases to determine this identical question of value. In a case where the facts show the possibility of expert knowledge, the jury may be aided in reaching its conclusion by expert evidence; but, when there is no one within reach of the processes of the court who is in better position to fix a value thereon than the jury, then the jurors must determine such value from their own knowledge, intelligence, and experience in human affairs. This question was fully considered and determined by this court, and the authorities collected and cited, in the case of L. & N. Ry. Co. v. Burns, 242 Fed. 411, 416, 155 C. C. A. 187.

That the jury in this case returned a verdict of only $25,000 for these services covering a period of 12 years evidences the fact that the jury was not influenced by passion or prejudice, or controlled by mere sentiment, but, on the contrary, that it endeavored, as best it could, to arrive at an amount that would be fair, reasonable, and right to both parties.

Whether the $40,000 in bonds were delivered by the deceased to the plaintiff, or to some one for her, as absolute and unconditional gifts, or were given by the deceased in his lifetime and received by plaintiff as a part or full payment for her services, was a question of fact for the jury, and the court, in its charge, fairly submitted that question for its determination.

The judgment is affirmed.